UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAZAL RAHMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Civil Action No. 06-1283 (JDB) |
| | ) |
| MICHAEL JOHANNS, SECRETARY, | ) |
| Department of Agriculture | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

**OPPOSITION TO PLAINTIFF'S MOTION TO
". . . STOP AND REVERSE . . . [A] SETTLEMENT AGREEMENT . . ."**

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully opposes Plaintiff's "Motion to order the US Department of Agriculture to stop and reverse the implementation of the settlement agreement, involved in this case, pending the court's decision."  The motion by Plaintiff, *Pro se*, appears to seek preliminary injunctive relief, but clearly fails to satisfy the grounds therefore and, if granted, would be extremely prejudicial to the U.S. Department of Agriculture ("USDA") and other beneficiaries of the settlement agreement the implementation of which Plaintiff seeks to stop or reverse.  Accordingly, for the reasons set forth below, Defendant submits that Plaintiff's motion is without merit and should be denied.

**BACKGROUND**

In his motion, Plaintiff essentially seeks to have the Court stay or hold in abeyance implementation of the settlement agreement in the administrative, class action case of <u>Arun Basu, et al. v. USDA</u> Class Action, EEOC No. 100-A1-7863X, Agency No. 000190.  In support, Plaintiff offers little more than his own conclusory opinion about the fairness and legality of the settlement and the EEOC's evaluation of Plaintiff's challenges to the agreement.  However, Plaintiff offers no

concrete grounds justifying this Court halting the implementation of the agreement, other than the fact that he filed a lawsuit. Plaintiff's motion references his Complaint in order to establish his basis for concluding that the agreement is being implemented. Liberally construed, the Complaint's references themselves reference Plaintiff's concerns advanced at the administrative level that his individual complaint of discrimination and a separate class complaint of discrimination were held in abeyance by the Basu class action settlement, even though his appeal of the settlement was still pending. Compl. at Exhibit 14, page 1-2. However, even in these references, Plaintiff can be heard to say little more than that the settlement was unfair in "pushing" its form of relief upon him and that it is illegal, unconstitutional and damaging to his administrative complaints. Compl. at Exhibit 14, page 2-3. Plaintiff, nonetheless, offers no basis for these conclusions.

The USDA has proceeded to process the Basu class action settlement, which involves hundreds of employees and a substantial sum of money. The Basu settlement agreement provided substantive injunctive relief and comprehensive individual relief to Class Agents and Class Members. See Declaration of James H. Bradley (hereinafter "Bradley Dec") (attached) at ¶ 4. The injunctive relief includes the creation of a Development Opportunity Placement Program (DOPP) to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations; the creation of a Graduate Scholarship Program to provide funding for graduate school; and an Agency-wide Job Fair held at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically under-represented. Id.

For purposes of individual relief, the Class was divided into tiers. Bradley Dec at ¶ 4. Tier One consists of six Class Agents whose claims were separately resolved by USDA. Id. Tier Two consists of the remaining 22 Class Agents, who shared in a lump sum monetary payment. Id. Tier Three consists of individuals with pending administrative complaints subsumed by the Class Action, and several individuals with complaints pending in Federal district court, who received monetary relief as well. Id.

To date, USDA and the sub-Agencies involved in the Basu settlement agreement have provided monetary relief for implementation of the Settlement Agreement in an amount estimated to be over two million dollars ($2,000,000.00). Bradley Dec at ¶ 5. This relief includes, but is not limited to, payments to individual class members on each of the three tiers, payment of attorney's fees, as well as other funds expended in support of the injunctive relief associated with implementation of the injunctive relief. Id. at ¶ 5.

As explained by Mr. Bradley, it would be exceedingly burdensome, if not impossible, for USDA and its sub-Agencies to "reverse implementation" of this historic administrative Class Action settlement. Bradley Dec at ¶ 6. To the extent that any monies would have to be returned by class members and implementation of the injunctive relief undone, the request Plaintiff makes would be onerous to fulfill. Id. The Department, and these employees, would be prejudiced substantially if Plaintiff were to prevail on his motion.

## ARGUMENT

**Standards for Issuance of Temporary Restraining Orders and Preliminary Injunctions**

It is well established that injunctive relief is an extraordinary remedy and that the party seeking it has a substantial burden of proof. American Coastal Line Joint Venture v. United States Lines, Inc., 580 F. Supp. 932, 935 (D.D.C. 1983). The criteria that govern the issuance of temporary and preliminary injunctive relief in the District of Columbia are well-settled. In order for the Court to exercise its power to grant this extraordinary relief, the Plaintiffs must show: (1) a strong likelihood of prevailing on the merits of their claims; (2) that without injunctive relief they will suffer irreparable harm; (3) that, balancing hardships, the issuance of an injunction will not substantially harm other interested parties; and (4) that the public interest favors the requested injunction. Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam); Washington Metropolitan Area Transportation Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843-44 (D.C. Cir. 1977). This balancing test is a flexible one, permitting a court to issue injunctive relief when the likelihood of success is high, although probability of irreparable harm may be low, and vice versa. See Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986). Nevertheless, although it is a flexible standard, both elements of likelihood to prevail and irreparable harm must be shown. District 50, United Mine Workers of Am. v. International Union, United Mine Workers of Am., 412 F.2d 165, 167 (D.C. Cir. 1969) ("A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried.").

Preliminary injunctive relief is a drastic and extraordinary form of relief that should not be granted absent a clear and convincing showing by the moving party, Yakus v. United States, 321 U.S. 414 (1944); Kahane v. Secretary of State, 700 F.Supp. 1162, 1165 (D.D.C. 1988). This is an exacting standard that Plaintiff cannot meet. "The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). Moreover, to constitute irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical." Id. Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). Where the public interest may be affected, the Court may withhold issuance of an injunction even at the cost of hardship to the petitioner. Id.; see also, Marine Transport Lines, Inc. v. Lehman, 623 F. Supp. 330, 335 (D.D.C. 1985).

"Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, is not enough . . .. But injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits." Virginia Petroleum Jobbers Ass'n, 259 F.2d at 925. "An injunction may be justified for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (1995). Wisconsin Gas Co. v. FERC, 758 F.2d at 674, sets forth the guiding principles for determining whether irreparable harm exists that (1) the injury must be both certain and great, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for

relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened.  See also Sampson v. Murray, 415 U.S. 61, 88-90 (1974). An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if the injunctive relief is not granted.  See, e.g., Davenport v. International Brotherhood of Teamsters, 166 F.3d 356, 360 (1999).

     As is clear, Plaintiff has not met his burden of establishing that injunctive relief is appropriate in this matter because he cannot show irreparable harm, he has little likelihood of success on the merits, and Plaintiff has failed to establish that granting his motion is in the public interest.

     The relief Plaintiff seeks in his motion is one of the elements of final relief that he seeks in this lawsuit. See Compl. at 17.  Given the nature of Plaintiff's claims, it appears that he is on the one hand advancing an ordinary Title VII lawsuit, and on the other seeking some form of administrative review of the EEOC's approval of the Basu settlement agreement.  Although Plaintiff fails to set forth a jurisdictional basis for his claim, a liberal reading of his complaint may permit (although we do not concede that it permits) the view that he is advancing a claim under the Administrative Procedure Act for review of the settlement agreement.  Assuming *arguendo* that he is advancing such a claim, the action would be subject to the "arbitrary and capricious" standard of review. Defendant submits that this standard would be extremely difficult for Plaintiff to meet.

     Plaintiff offers little more than conclusory allegations about alleged defects in the settlement that would justify dismantling the Basu settlement.  Given the number of litigants involved and the breadth and cost of the agreement structured, Defendant posits that it would be extremely unlikely that this Court could find that the decision to approve the settlement agreement was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  See 5 U.S.C. § 706.

Before the Equal Employment Opportunity Commission (EEOC) approved the Basu settlement agreement, Plaintiff filed objections. See Decision Granting Final Approval of Settlement Agreement (attached) at 2, n.1. The EEOC, in a comprehensive decision, considered but rejected Plaintiff's and other complainant's objections to the settlement agreement, finding that it was fair, adequate and reasonable. Id. at 1-12. The EEOC, Office of Federal Operations affirmed. Compl. at Exhibit 2.

Moreover, given that the essential issue for resolution appears to be not whether the Basu settlement should stand, but rather whether Plaintiff should have the opportunity to pursue the relief he sought in his administrative complaints, Plaintiff has not been irreparably harmed since his administrative complaints have not been finally and irreparably resolved. The fact that Plaintiff is pursuing Title VII relief by the same complaint certainly undercuts any claim of irreparable harm. Finally, as we set forth above, considering the relative harm to the Defendant and to the public occasioned by the relief sought by Plaintiff, the balance of harm clearly weighs more heavily against awarding the requested relief because of the onerous burden this would place on the Defendant and the other participants in the Basu settlement. As stated by the Court in Moore v. Summers, 113 F. Supp.2d 5 (D.D.C. 2000),

> It is well-settled that preliminary injunctive relief is not usually available in employment cases because "[e]ven under the traditional standards of Virginia Petroleum Jobbers, supra, it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." Sampson, 415 U.S. at 90, 94 S.Ct. 937. Thus, even if it is assumed that the plaintiffs will face future retaliation, the harm they would presumably suffer as a result is not irreparable because "[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Virginia Petroleum Jobbers, 259 F.2d at 925.

Moore v. Summers, 113 F. Supp.2d 5, 25-26 (D.D.C. 2000).

## CONCLUSION

WHEREFORE, Defendant submits that Plaintiff's "Motion to order the US Department of Agriculture to stop and reverse the implementation of the settlement agreement, involved in this case, pending the court's decision" should be denied.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
Interim United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, this 4th day of October, 2006, that the foregoing Opposition to Plaintiff's Motion ". . . to Stop and Reverse . . . [A] Settlement Agreement . . ..", has been sent by first-class mail, postage prepaid, to Plaintiff, *Pro se*, addressed as follows:

Fazal Rahman, Ph.D.
P.O. Box 1422
Glendale, AZ 85311

/s/
OLIVER W. McDANIEL, D.C. Bar No. 377-360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739