EXH. 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0701

|  |  |
|---|---|
| Arun C. Basu, *et al.*,<br>    Complainants,<br><br>    v.<br><br>Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>    Agency. | EEOC No. 100-A1-7863X<br><br><br>Agency No. 000190<br><br><br>Date: **December 7, 2004** |

## DECISION GRANTING FINAL APPROVAL
## OF SETTLEMENT AGREEMENT

The Settlement Agreement (Agreement) in the captioned class case, signed by the parties on October 31, 2003, is hereby **APPROVED**. After careful consideration of the Agreement and the written objections, I find that the Agreement is fair, adequate, and reasonable to the class as a whole. As such, and in accordance with 29 C.F.R. § 1614.204(g)(4), I hereby give my final approval to the Agreement.

### Procedural Background

On November 18, 1999, lead Class Agent Dr. Arun Basu filed a formal complaint of discrimination on behalf of a proposed class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint. By decision dated September 15, 2000, the administrative judge originally assigned to the case determined that the class failed to meet the procedural requirements for certification set forth at 29 C.F.R. § 1614.204(a)(2). After the Agency issued a final order

accepting that decision, the Class Agents filed an appeal with the Commission's Office of Federal Operations (OFO).

In a decision issued on June 27, 2001, OFO partially reversed the prior decision, conditionally certifying a class comprised of "all Asian employees of the [A]gency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the [A]gency but have not been selected." Following the remand of the case to this office, it was assigned to the undersigned administrative judge. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification, the parties entered into the Agreement on October 31, 2003. On January 27, 2004, the undersigned granted preliminary approval of the Agreement, and a Notice of Proposed Settlement (Notice), along with the Agreement itself, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the Class as well as all identified Asian/Pacific Islander employees who fell under the Class definition but did not have pending individual complaints of discrimination. The Notice was also posted on the Agency's web site and in appropriate Agency bulletins. The Notice provided that Class Members would have 30 days in which to file objections, if any, with the undersigned. Ten objections were ultimately received by the undersigned.[1]

**Temporal Scope of the Agreement**

By motion dated August 26, 2004, the parties requested that the temporal scope of the class be limited to the period from February 1994 to September 2, 2003. As noted at the outset, the class was originally defined as "February 1994 to the present." I am cognizant, however, that a settlement agreement of this nature is not final at the time it is signed and that, inevitably, a period of time elapses between that time and the time the agreement it is ultimately approved, if at all. The parties have represented that, at the time they were negotiating the Agreement, they arrived at certain

---

[1] Petitions were received from the following Class Members: Jamshyd Rasekh; Jess Rajan; Kunapuli Madhusudhan; Muhammad Chaudhry; Emiko Purdy; Fazal Rahman; Mon Yee; Robert Tse; Clemen Gehrlan; and Abdul Sadiq. Their objections will not be addressed individually; however, to the extent the undersigned believes that a relevant objection has been made, that question will be addressed. In particular, relevant points that were raised in the objections were that: the Class Agents were getting too much relief and/or that Class Members in the lower two tiers of the Agreement were not getting enough; the Agreement does not explicitly identify the relief being received by certain Class Agents; and, it is unclear from the Agreement how certain relief is to be allocated.

amounts of relief based on the circumstances that existed at the time in terms of how many pending complaints were subsumed. On this point, the parties have provided what they believe to be a fairly exhaustive list of individuals who had such complaints at the time the Agreement was being negotiated. Because the Agreement was reached using that data, and because the parties have represented that they did not consider complaints filed after September 2, 2003, in reaching the Agreement, I find that it is appropriate to limit the temporal scope of the class to the period from 1994 to September 2, 2003. Accordingly, I find that the Agreement does not encompass individual complaints that were filed after September 2, 2003, and which otherwise would be subsumed in the class. Therefore, such complaints should either continue to be processed as individual complaints or, if they have been placed in abeyance because of the class complaint, should be reinstated for processing.

## Relief Provided by the Agreement

The Agreement can be characterized as providing two types of relief, the first being injunctive relief that will be in effect for a period of three years. That relief includes, initially, the creation of a Development Opportunity Placement Program (DOPP). The Agreement provides that a pilot DOPP will be created within 180 days of the effective date of the Agreement within certain Agency subagencies that have been identified by the Class Agents as having problems with respect to promotions and details. These subagencies include the Food Safety and Inspection Service (FSIS), the Agricultural Research Service (ARS), the Farm Service Agency (FSA), the Office of Civil Rights (OCR), the Natural Resources Conservation Service (NRCS), and the Animal and Plant Health Inspection Service (APHIS).

The purpose of the DOPP is to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. The DOPP, which will be subject to funding availability, will require subagencies to make available no fewer than two opportunities annually during the three years the Agreement is in effect. The details, temporary promotions, or developmental assignments will be for a minimum of 31 days, will cover all pay grade levels, and will be posted on a web site. The DOPP will be open to all employees, although

the Agreement provides that Class Agents who are eligible and qualified to participate in it will receive priority consideration.

The second aspect of the injunctive relief is the creation of a Graduate Scholarship Program to provide funding for graduate school. Within 180 days of the effective date of the Agreement, the Agency will create such a program for Masters and PhD students within FSIS, FSA, NRCS, the Forest Service (FS), the Agricultural Marketing Service (AMS), the Office of the Chief Financial Officer (OCFO), the Grain and Packers and Stockyards Administration (GPSA), and the National Agricultural Statistics Service (NASS). The Agreement provides that, between these offices, there will be a total of 36 scholarships, and the Agency Liaison, with the assistance of the affected subagencies, will establish requirements for eligibility, eligible fields of study, selection criteria, and all other details of the program.

The third aspect of injunctive relief is an Agency-wide Job Fair that will be held at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically underrepresented. The Agreement provides that the Job Fair will be sponsored by FS, NRCS, AMS, FSA, OCFO, GPSA, NASS, and the Rural Housing Service.

Fourth, the Agreement provides for certain policy development, including the review, update, and issuance of an Agency-wide Affirmative Employment Plan (AEP) to ensure that all appropriate issues related to Class Members are addressed in the plan. Additionally, the Agreement provides that the Department's Assistant Secretary for Civil Rights or designee and Agency Liaison will work with Agency subagencies to ensure that they have current and comprehensive AEPs.

Finally, the Agreement provides that every employee will have an up-to-date individual development plan (IDP). Pursuant to the Agreement, at the request of a Class Member the subagency in which s/he is employed is required to ensure that his/her IDP is up-to-date and that it has identified appropriate training specifically tailored to enhance that individual's job performance.

For purposes of individual relief, the class is divided into four tiers, *i.e.*, Tier One, Tier Two, Tier Three, and Tier Four. Tier One comprises six Class Agents, including Dr. Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The Agreement provides that these individuals will enter into individual settlement agreements with the Agency. Under those agreements, Dr. Basu will receive: a retroactive promotion effective September 1998

4

into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay of $98,219; restoration of 564 hours of sick leave; $200,000 in compensatory damages; expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey will receive: a retroactive promotion effective September 1998 into the position of Veterinary Medical Officer (National Poultry Program Leader), Office of Public of Health and Science, GS-14; back pay in the amount of $46,000; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Yee will receive: a retroactive promotion effective September 1998 into the position of Invasive Species Program Manager, U.S. Forest Program Pacific Southwest Region, in Vallejo, California; back pay estimated to be $68,154; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Murthy will receive: $40,000 in compensatory damages; advancement to the GS-14, Step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff, Office of Personnel Management (OPM) Leadership training; and reasonable attorney's fees. Dr. Lakhani will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees. Finally, Dr. Saini will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees.[2]

Tier Two is comprised of the remaining 22 Class Agents, who will share $372,500, along with two former Class Agents who are not included in the Agreement because they previously signed settlement agreements resolving their individual complaints. The parties have represented that the distribution of this sum will be at the discretion of Dr. Basu, with the assistance of his representative, and will involve a system whereby each individual is required to file a petition setting forth his/her entitlement to a specific amount. The Agreement provides that each of the five Tier Two Class Members with pending administrative complaints will receive attorney's fees not to exceed $25,000. Finally, the Agreement provides that the two Tier Two Class Agents with Federal district complaints will receive "[a]ll attorney's fees."

---

[2] The Agreement provides that Tier One Class Members will receive, altogether, $350,000 in reasonable attorney's fees.

Tier Three is comprised of individuals with pending administrative complaints and two individuals with complaints in Federal district court. With respect to the former, these individuals will be afforded the option of either accepting a lump sum payment of $5,000 or an expedited hearing on their individual complaints along with an entitlement to the injunctive relief. The two individuals with pending district court cases will receive a lump sum payment of $7,500 and attorney's fees.

Tier Four is comprised of those Class Members who have not filed individual complaints of discrimination. The Agreement provides that these individuals will be entitled to the injunctive relief.

## Class Member Consideration

The manner in which the Agreement is structured affords the Class Members in Tiers One through Three two options, *i.e.*, either accept the offered individual relief or not accept that relief and merely be entitled to injunctive relief. Regardless of which option is exercised, those portions of the Class Members' individual administrative complaints that are subsumed within the class are deemed to be resolved.[3] Furthermore, Class Members, under either option, would still be entitled to pursue those portions of their complaints that are not subsumed.

For those Class Members with cases pending in Federal court, no portion of their complaints can be deemed to be subsumed. In so finding, I note that the applicable regulations, along with EEOC Management Directive 110 (MD-110), only contemplate that individual complaints within

---

[3]The undersigned interprets the term "subsumed" to be controlled by the claim, not the basis. To wit, what is subsumed by the class complaint are any issues involving promotions and/or non-selections, regardless if they were brought under bases other than race or national origin. Therefore, a Class Member whose individual complaint also alleges that a non-promotion was based on another protected category other than race or national origin, *e.g.*, gender, would not be permitted to pursue the non-promotion under that basis(es). I am cognizant that the Agreement, in the section which discusses Class Member consideration, contemplates that an individual complaint is either subsumed or not subsumed and does not address the contingency that one complaint could contain both subsumed and non-subsumed claims. I find that the intent of this provision, however worded, is that Class Members can still pursue individual claims that are not subsumed. Indeed, I find that the parties, even had they wanted to, do not possess the authority to require Class Members to withdraw complaints/claims that are not subsumed within the Class.

the administrative process are subsumed.[4]  Therefore, if a Class Member with a case(s) in Federal court does not opt for relief under the Agreement, his/her case(s) is not otherwise affected by the Agreement.  It is apparent that there are five individuals who have such complaints, *i.e.*, Dr. Mon Yee, Dr. Ronald Shinsato, Dr. Jess Rajan, Dr. Joyce Mayekawa, and Dr. Jamshyd Rasekh. According to the Agency, with respect to both Dr. Shinsato and Dr. Rajan, the parties in those cases were granted stays by the district court pending a ruling on the fairness of the Agreement.  Similarly, the Agency represents that Dr. Mayekawa's case was dismissed by the district court without prejudice pending final resolution of this class action.

With respect to Dr. Rasekh, the Agency cites a letter dated February 25, 2004, in which he rejected the offer of all attorney's fees and the other Tier Two relief.  Although Dr. Rasekh subsequently informed the parties in July 2004 that he was withdrawing his objection and wished to participate in the Agreement, the parties assert that his initial rejection extinguished the offer.  Dr. Rasekh's primary assertion in response is that his actions cannot be construed as a rejection of the applicable terms in the Agreement insofar as the Agreement was conditional in nature and had yet to be approved by the undersigned.  In considering this question, I find that the parties' position is unpersuasive.  Initially, although the parties have argued that Dr. Rasekh proceeded with his district court claims at his own peril, it is not apparent what option he had.  On this point, although the parties have represented that stays were obtained with regard to Dr. Shinsato and Dr. Rajan, there is no indication that the Agency sought to achieve a stay in Dr. Rasekh's case and/or broached that possibility with Dr. Rasekh.  More important, I find persuasive Dr. Rasekh's argument that he could not have rejected the offer made in the Agreement because the Agreement was, in fact, not final. In this regard, I find that, until an administrative judge approves a class settlement, none of the provisions have any legal effect.[5]  Therefore, there was never any actual offer for Dr. Rasekh to

---

[4]The term "subsumed," for purposes of this decision, means complaints/claims at the administrative level that fall within the definition of the class.  Complaints/claims in Federal court may fall within the definition of the class, but they are not subsumed.

[5]Additionally, from a practical standpoint, because the Agreement states that Dr. Rasekh is entitled to certain relief, it is not apparent how the parties could simply ignore that language once the Agreement is approved without being deemed to have breached the Agreement.  The undersigned, even if he agreed with

(continued...)

reject. Accordingly, I find that Dr. Rasekh is entitled to the Tier Two relief offered in the Agreement.

In Dr. Yee's case, it is apparent that, at the time the Agreement was signed, his cases were pending at the administrative level. Thereafter, however, Dr. Yee took his complaints into Federal district court. The Agency's position is that, although the circumstances which led the parties to offer Dr. Yee substantial relief have changed, it should not be required to provide him with that relief while allowing him to maintain his district court complaints. In reviewing Dr. Yee's objection, it is not apparent that he is asserting he should be entitled to the offered individual relief for only withdrawing those complaints/claims that remain at the administrative level. Furthermore, even if he were arguing that, the Agreement does not state that the offered relief is only in exchange for the withdrawal of subsumed administrative claims. In so finding, I note that the portion of the Agreement that applies to Tier One refers to "individual claims of employment discrimination," and does not draw a distinction between administrative and Federal district court complaints. Agreement at 14. Moreover, in the portion of the Agreement that discusses what needs to be withdrawn for a Class Agent or Class Member to receive individual relief, it refers to all complaints, administrative or Federal, falling within the definition of the Class and pending at the "Effective Date of this Agreement," *i.e.*, the date on which it is finally approved. Agreement at 6.

Dr. Yee's objection states, in relevant part, that he "is pursuing claims in the Los Angeles federal district court, several of which concern promotions. The question then becomes what process is due before the government can deprive him of his property interest in his claims, which he would much rather pursue on his own . . . ." I find that this objection is premised on a misunderstanding by Dr. Yee of what his rights are under the Agreement. As discussed, in the event Dr. Yee does not opt for any individual relief, he can still pursue all of his Federal district court complaints, including those complaints/claims involving promotions and/or non-selections. Furthermore, if Dr. Yee

---

[5](...continued)
the parties' position, does not have the authority to invalidate provisions of the Agreement. In this regard, an administrative judge may not modify the proposed agreement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

accepts the individual relief, he would only be required, under the terms of the Agreement, to withdraw those claims deemed to fall within the definition of the class.

### Tier One Relief

At the time the Notice was issued, the parties requested that, for privacy reasons, the four exhibits referenced in the Agreement not be disseminated. Exhibit One identifies the six Class Agents in Tier One and contains the letters sent to each of those individuals regarding the relief proposed for them. Exhibit Two identifies the 22 remaining Class Agents as well as the former Class Agents not included in the Agreement, along with a sample of the letter of proposed relief that was sent to the 22 Class Agents. Exhibit Three identifies the 31 individuals who were deemed eligible to receive Tier Three relief, a sample letter of proposed relief that was sent to these individuals, and a 10-page document listing various Agency employees who had filed EEO complaints. Finally, Exhibit Four contains a sample copy of the letter sent to Tier Four Class Members, along with an extensive list of Asian individuals employed by the Agency.

Dr. Yee objects to the decision not to disseminate the four exhibits, arguing that "[r]eferences to undisclosed terms and attachments is wholly inadequate to allow a class member to evaluate the resolution." In considering this assertion, I am not persuaded that the decision to not include the documents set forth in Exhibits Two, Three, and Four, was inappropriate. In so finding, I note that, because the relief being provided to individuals in Tiers Two through Four is specified in both the Agreement and the Notice, it is not apparent how having these exhibits would have helped an individual "evaluate the resolution." I do agree, however, that the information contained in Exhibit One should have been made available to the Class Members. In so finding, I note that the regulations at 29 C.F.R. § 1614.204(g)(4) state that the notice of relief issued to the Class Members "shall state the relief, if any, to be granted by the agency . . . ." In this case, both the Notice and the Agreement state that the six Class Agents in Tier One would receive relief pursuant to "individual settlement agreements." Having considered this provision, I find that it is too vague to satisfy the aforementioned requirement. Furthermore, I find the term "individual settlement agreement" to be a misnomer. A settlement agreement is a contract which two parties enter into freely. In this case, I find that the individual agreements cannot be deemed contracts insofar as most, if not all, of the consideration being provided by the six Class Agents, *i.e.*, the withdrawal of their subsumed claims,

9

is the consideration that was already being provided by virtue of the Agreement itself. In other words, once the Agreement is approved, the six Class Agents, whether or not they enter into the "individual settlement agreements," are precluded from pursuing those administrative claims that are subsumed within the class complaint. As such, I find that the "individual settlement agreements" are merely a mechanism through which the six Class Agents in Tier One are to receive the relief provided by the Agreement itself.[6]

Despite arriving at this conclusion, I have determined that, although the Notice should have specifically identified the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. What is clearly implicit in the Agreement is that the Class Agents in Tier One are to receive more relief than those in the lower three tiers.[7] As such, any Class Member in the lower three tiers who believed s/he was not being offered adequate relief and/or did not believe it was equitable to provide the Class Agents in Tier One with more relief could have filed a petition to that effect.[8] More important, every Class Member was aware of the relief that s/he is entitled to under the Agreement. Therefore, if a Class Member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief.

## Fairness of the Agreement

The standard for EEOC approval of class case settlements is whether the Administrative Judge finds that the agreement is "fair, adequate and reasonable to the class as a whole." 29 C.F.R.

---

[6]Even if I were to conclude that these constituted valid settlement agreements, there is still no legitimate privacy concern as the six Tier One Class Agents, in negotiating for the relief they are to receive, bound the other Class Members.

[7]In particular, both the Agreement and the Notice state that the Tier One Class Agents would be receiving $350,000 in attorney's fees, which is considerably more per Class Agent than the $25,000 being received by the Tier Two Class Agents with pending administrative complaints.

[8]I note that at least two Class Members filed petitions objecting to the fact that the Class Agents in Tier One were getting too much relief. Furthermore, I note that Dr. Yee is the only Class Member who objected to the fact that such relief was not specified. Dr. Yee is not only a Tier One Class Agent himself, but, had he wished to know the terms of the relief being offered to the other Tier One Class Agents, he could have sought that information from class counsel. Finally, the individual relief has been specified in this decision, and any petitioner who believes it is unfair has the right to raise such an argument in an appeal.

10

§ 1614.204(g)(4)(2002). If the Administrative Judge finds that the resolution of the complaint is "fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class." *Id.; see also Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999). The Administrative Judge may not modify the proposed settlement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

Neither EEOC regulations nor MD-110 identify the considerations for determining whether a class settlement is fair, adequate and reasonable. *See* 29 C.F.R. Part 1614; EEOC EEO Management Directive 110 ("MD-110") (November 9, 1999), Ch. 8. Courts, however, have stressed that the "test is whether the settlement is adequate and reasonable and not whether a better settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931 at *19 (D.D.C. Mar. 20, 2000). "Voluntary compromises of Title VII actions enjoy a presumption of validity, and should therefore be approved 'unless [they] contain provisions that are unreasonable, unlawful, or against public policy.'" *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128-29 (2d Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984). Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. *Osher v. SCA Realty, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996).

The Commission has held that the administrative judge's primary task is to evaluate the terms of the settlement in relation to the strength of the Complainants' case. *Modlin v. Social Security Administration*, EEOC Appeal No. 01A24054 (February 20, 2003) (*citing Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998). At the time the present case settled, the class was only conditionally certified and the parties had filed briefs on the question of whether the class should be fully certified. As such, there was a risk that the class would be decertified and never actually proceed to a hearing on the merits. To obtain relief comparable to that provided under the Agreement, the Class would, in addition to achieving full certification, had to have proved Agency discrimination over the course of several years. Additionally, in the event a finding of discrimination were made, each Class Member would have had to establish his/her individual entitlement to relief. Finally, I note that the injunctive relief provided by the Agreement would not have been available as a remedy in the event

the Class had prevailed after a hearing.[9]  For these reasons, I find that the relief being provided, which includes potentially as much as $1,700,000 in individual relief and attorney's fees, is fair and adequate to the Class as a whole.

With respect to the individual awards of relief, the six Class Agents in Tier One, along with those identified in Tier Two, are receiving more individual relief than the other Class Members as well as priority consideration under the DOPP.  As the parties correctly note in their motion for approval of the Agreement, the Commission has held that it is fair to provide greater relief to the Class Agents as they are the individuals who have spearheaded the class complaint of discrimination. On this point, the parties assert that the Class Agents were not only actively involved in the litigation of the complaint, but they have "appeared at certain meetings on behalf of the Class with high-level officials in USDA . . . ."  The Class Members identified in Tier Three, despite having individual complaints, were not actively involved in the class action.  If these individuals are not satisfied with the lump sum offer of $5,000, they have the option of an expedited hearing on their subsumed claims.[10]  Finally, although the Class Members who fall under Tier Four are eligible only for injunctive relief, I note they are giving up nothing as a result of the Agreement.

### DECISION

For the foregoing reasons, I conclude that the Settlement Agreement is fair, adequate and reasonable to the Class as a whole and find no basis for vacating the Settlement Agreement. Accordingly, it is my decision to grant final approval to the Settlement Agreement.  Pursuant to 29 C.F.R. § 1614.204(g)(4), the resolution shall bind all members of the class.

It is so **ORDERED**.

Date: December 7, 2004

Andrew Culbertson
Administrative Judge

---

[9]Specifically, injunctive relief of this nature is not available under 29 C.F.R. Part 1614.

[10]MD-110 provides that class members may not "opt out" of the defined class. Although allowing certain Class Members the opportunity to proceed with their individual complaints could be viewed as allowing them to "opt out," they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing.

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. §1614.204(g)(4), finding that a resolution is fair, adequate, and reasonable. This regulation provides that the Administrative Judge's decision approving resolution of a class complaint binds all members of the class.

The Administrative Judge's decision approving a class resolution must inform all members who filed petitions objecting to the proposed settlement ("petitioners") of the right to appeal the decision to the Equal Employment Opportunity Commission, Office of Federal Operations. The decision must include a copy of EEOC Form 573, Notice of Appeal/Petition. See MD-110 at 8-10, 9-3.

Neither the regulations nor MD-110 require the Agency to issue a final order following an Administrative Judge's decision to approve a settlement. **Accordingly, this decision directly triggers petitioner's rights to appeal the approval of the Settlement.** Such appeals must be filed within thirty (30) days of receipt of this decision. Please attach a copy of this decision and a competed Form 573 (Notice of Appeal) with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the parties at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the parties.

### WHERE TO FILE AN APPEAL:

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

#### BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

#### BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

13