UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FAZAL RAHMAN )
)
           **Plaintiff** )
)
)
)
)
)
)
Vs. )
)
) Civil Case No. **1:06-cv-1283 (JDB)**
)
MIKE JOHANNS )
SECRETARY, U.S. DEPARTMENT )
OF AGRICULTURE )
)
           **Defendant** )
)
_____)

RECEIVED
DEC 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Request to deny and disregard the Defendant's Motion to dismiss or for a more definite statement. Plaintiff's Motion for a Summary Judgment.**

I received the above Motion of the Defendant, dated November 15, 2006, on November 20, 2006. In the Motion, the Defendant falsely claimed that the Complaint is incoherent and confusing (Motion, p. 9) and requested the court to dismiss the complaint or order the Plaintiff to revise the Complaint and file a more definite statement. In its Order of November 17, the court has ordered the Plaintiff to respond to the Defendant's Motion by December 4, 2006. In his Order of August 24, 2006, the Honorable Judge, John D. Bates, had ordered the Defendant to answer the Complaint by September 25. The Defendant filed a motion for extension of time to November 15, which was granted by the court. When the case was

originally filed in the Federal District Court of Arizona, the Defendant had 60 days to answer the Complaint. Close to the deadline, it requested another 60 days extension, which was granted to it by that court. At the end of that extended period, instead of answering the Complaint, the Defendant filed a motion for the dismissal or transfer of the case, on the basis of lack of proper venue. The Arizona Federal court did not dismiss the case but transferred it to the Federal District Court for the District of Columbia.

As is obvious in this new motion of November 15, the Defendant has again failed to answer the Complaint and, instead, has unleashed another noxious blast of disinformation, distortion and perversion of facts and logic, and muddied the waters for the purposes of sowing confusion, falsification, and cover up for its unconstitutional, illegal, corrupt, and unfair actions, all documented scientifically, with precision, in the Complaint File and associated exhibits. The truth is that Defendant's actions in this case are indefensible. Its representatives know that very well and are, therefore, unable and unwilling to answer the Complaint, and, instead, are expending all their efforts in the creation of various smokescreens and muddied waters-projecting all that onto the Plaintiff!

In this document, the Plaintiff respectfully requests that the Defendant's Motion for dismissal or revision of his Complaint be denied and disregarded. The Plaintiff is also filing the Motion for a Summary Judgment here. The following analysis and arguments address and illuminate both these matters.

## Arguments, analysis of the Defendant's Motion, and legal and constitutional matters

As I am an Asian American, the Agency placed my individual employment discrimination Case #010538 in abeyance, within and as part of the Asian/Pacific American (APA) Class Action Case. As analyzed and documented in the Complaint, it attempted to settle that individual case within the framework of APA Class Action Case of Basu et. al. However, the offer to the Plaintiff was grotesquely and racist-discriminatorily unfair, inadequate, and unreasonable, and,

hence, unacceptable. On pages 2 and 7 of the Motion, the Defendant briefly describes the filing of that individual complaint. In view of these actions of the Agency, it is totally logical and essential to pursue and include my individual employment discrimination Case #010538 in this court case, as part of the Complaint against the APA Class Action Settlement Agreement. However, the Defendant self-contradictorily attempts to muddy the waters on pages 9 to 11 of the Motion, claiming confusion because of this inclusion, which was done by the Agency to begin with. The Plaintiff is only continuing the integration of his individual case into the APA Class Action Case by the Agency. What if the Plaintiff had accepted the Agency's offer to settle the individual case as part of the class settlement agreement? In that scenario, the individual case would have been resolved and settled as part of the APA class settlement, albeit in a totally unfair, inadequate, and unreasonable manner. All that would have been perfectly "coherent" and "clear" to the Defendant's representatives. However, when the Plaintiff is attempting to obtain a fair, adequate, reasonable, and non-discriminatory settlement of the same individual case, as part of the same APA class settlement agreement, all of a sudden, the Defendant's representatives start feigning confusion and attributing incoherence to it! The Complaint is perfectly clear and unambiguous on this matter. It is seeking a judicial review of the Basu class action settlement agreement and, as part of that, it is also seeking a fair, adequate, reasonable, and non-discriminatory resolution of the individual case, which was made part of the class settlement agreement by the Agency itself.

On page 11 of the Motion, again, the following bizarre and ridiculous statements are made by the Defendant:

*"A more definite statement of Plaintiff's claims is critical because, as stated, to the extent Plaintiff is advancing Title VII claims, he must have filed a timely administrative claim with the employing agency and exhausted his administrative remedies before filing a civil action. Plaintiff's Complaint lacks the necessary clarity and specificity to enable the Defendant to*

*understand the nature of the claims against his Department. Rather, Plaintiff's Complaint appears to seek to advance both his individual claims and those of an undefined class of litigants. The commonality of these claims, if any, remains unclear because of the Complaint's lack of focus, organization, and coherence."*

Is it not self-evident that the administrative claims were filed in a timely manner with the Agency? On pages 2 and 7 of the Motion, the Defendant itself describes part of that process. The Agency made these claims part of the APA class action settlement precisely because these were filed in timely manner and everything else was also in order. The Defendant has all the information in its records, in this regard. So, what is the basis of such confusion and lack of clarity, as claimed by the Defendant, in this connection? As far as the Defendant's reference to an "undefined Class" is concerned, that is also totally erroneous and misleading. In the Complaint, I have repeatedly cited and demanded the restoration of the original EEOC definition of the Class, in which all the Asian/Pacific American persons, who applied for the Agency positions and were denied those positions, were included in the APA Class. I have also repeatedly attempted to demonstrate that the Agency's change of that definition, in which it restricted the Class Membership to only its current employees and expelled those APA Class Members, who are not its current employees, from the APA Class-even though both groups belong to the same category i-e., job applicants, involving the same agency and same time frame-is unconstitutional and illegal. I have also emphasized that this is the most important issue of this entire case. And yet, the Defendant has attempted to create fog even around this clearest of issues!

As far as the Defendant's above-cited assertion, about the requirement of exhausting administrative remedies before filing a civil action, is concerned, that is also erroneous. Title VII, 1614.407 states:

*A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:*

 *(a) Within 90 days of receipt of the final action taken on an individual or class complaint if no appeal has been filed;*

 *(b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;*

 *(c) Within 90 days of receipt of the Commission's final decision on an appeal; or*

 *(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.*

My individual employment discrimination Case #010538 was filed in December 2000. According to (b) and (d) above, I am authorized to file a civil action in an appropriate United States District Court. I have been authorized to do so for the past five years! And yet, the Defendant seems to be implying that I am not authorized to do so and is feigning great confusion and lack of clarity on this perfectly clear matter. Obviously, the Defendant is assuming that being a pro se Plaintiff, who is not an attorney, I do not have knowledge of the Title VII Act, and is attempting to take advantage of that. The Defendant does not know that I have studied the Title VII Act in detail and know all its contents, provisions, and my rights and obligations, as a member of a protected minority group. The Defendant has attempted to fabricate a totally false and non-existing problem here.

On pages 5 and 10 of the Motion, the matter of jurisdiction is brought up. When the motion for dismissal or transfer of the case was filed by the Defendant in the US District Court for the District of Arizona, on the basis of lack of proper venue, the Judge denied the motion for dismissal and, instead, transferred the Complaint to the US District Court for the District of

Columbia. The matter of jurisdiction and proper venue was, hence, resolved by the above action of the US District Court for Arizona. By that action, the court decided that the lack of proper venue in case of this Complaint did not constitute grounds for the dismissal of the case and therefore, instead of dismissing the Complaint, as requested by the Defendant, it transferred the case to the District of Columbia. On page 5 of that decision, Honorable Judge David G. Campbell wrote, "*Although Plaintiff's right to file an action was granted in respect to the Settlement Agreement, Plaintiff also included his individual employment discrimination claims in his complaint. See Doc. #1 Ex. 2. Even if Plaintiff's individual claims may be reviewed, venue would still not be proper in the District of Arizona. Doc. #18 at 5. The alleged unlawful practices underlying Plaintiff's individual complaint were committed in Washington, DC.....*" The above part of Judge Campbell's decision seems to indicate that if my individual employment discrimination case had not been included in the Complaint, and if only the Class Settlement Agreement issue was contained in it, it would have been accepted by the court for adjudication in Arizona. This shows ambiguity on the matter of jurisdiction even on part of Judge Campbell. See Order at p.5 (Dkt. No. 25), 2:05-cv-03010-DGC (US District Court for the District of Arizona) and (Dkt. No. 1), Rahman v. Johanns, 06-01283 (JDB) (US District Court for the District of Columbia). In my response to the Defendant's motion of dismissal or transfer, I had argued that more than 2000 class members were spread out throughout all the states of the US and they could file cases wherever they lived and worked. Therefore, as a class member, I also had the right to file the case in Arizona, where I lived. Doc. #19 at 2 (2:05-cv-03010-DGC, US District Court for the District of Arizona).

The substantial issues of the case, in which, besides other problems, the most important matters of violations of the Constitution and civil rights acts and laws are involved, are incomparably more important than the issues of proper venue, jurisdiction, numbering the paragraphs in the Complaint, etc. (see page 10 of Defendant's Motion). Relatively, the latter are mere trivialities

compared to the former. And yet, the Defendant is, most pathetically, magnifying these, while not only totally ignoring the incomparably more important substantial issues but also attempting to annihilate these with such trivialities! The use of such tactics is especially repugnant when these are targeted on the plaintiffs with pro se cases, who are not legal technicians, unlike the attorneys, who are. If such has become part of the job of the US attorneys, may God have mercy on this country and its people!

I have repeatedly listed and analyzed the following main specific issues of this case. In the Complaint and associated documents, detailed scientific analyses have been made of these issues, with almost mathematical precision, on the basis of documented facts. Various conclusions have been derived both by deductive and inductive logical processes and their validity elaborated and demonstrated. The Defendant is totally shamelessly and absurdly claiming confusion and attributing "incoherence" and "disorganization" to such scientifically and systematically organized material. It is also pretending an extreme difficulty in fitting these self-evident and specific facts and the self-evident and specific violations of the Constitution and civil rights laws, by the Defendant, in relation to these, into the categories of "Judicial Review", "Class Action Case", or "Individual Case", and on that basis, claiming inability to answer the Complaint! Defendant's pretensions in this regard constitute a deliberate and dishonest web of deception, by the use of which, it not only seeks to avoid addressing or refuting these irrefutable facts and issues, as well as its indefensible violations of the Constitution and civil rights laws, in regard to these, but also to annihilate them by his Motion of dismissal!

What is more important, the substance of the case-and its facts, logic, and issues-or how and where to fit them? I have presented all the facts, data, and their logical and legal analysis, as well as the Defendant's specific violations of the specific sections of the Constitution and civil rights laws, in particular of the Title VII Act. I have also described the Defendant's placement

and integration of my individual case into the APA Class Action Case and my continuation of that at the EEOC and now in the court case. As such, the individual case needs to be adjudicated within that context. Moreover, the request for the Judicial Review is both implicit and explicit in this Complaint. I believe that this case can also be considered under the Whistleblower laws as it involves frauds and fraudulent and deceptive actions of the Defendant. I am not a legal technician. As a Plaintiff of a pro se case, I trust and request the Learned and Honorable Judge to determine and decide which of these categories are applicable to this case.

**The four main issues-the substance-of the Complaint**

1. The unconstitutional and illegal *particular* change of the definition of the Asian/Pacific American (APA) Class by the Agency from its original EEOC definition and discriminatory, unconstitutional, and illegal exclusion and expulsion of an important structural part of that Class from the Class, identified and analyzed in detail on pages 1-6 of the Complaint as well as in various exhibits. This change is in clear violation of the Fourteenth Amendment of US Constitution, Section 1, Equal Protection of the Laws, as well as of Title VII Civil Rights Act.

2. Classist, racist, elitist, corrupt, and discriminatory distribution and allocation of monetary, professional, and other remedies and compensation, which, overwhelmingly benefited the six Class Agents in Tier One. For example, these six Class Agents, constituting 0.3 percent of the Class, were bribed with 58 percent of the total monetary relief (Compl. page 7-9). Twenty-two Class Agents in Tier Two, constituting 1 percent of the Class, and 30 Class Members in Tier Three, 1.5 percent of the Class, were given 33 percent and 9 percent of the monetary relief for the Class, respectively. Overwhelming majority of the APA Class Members, 1,972, constituting 97.2 percent of the Class, were placed in Tier Four and received no monetary relief whatsoever! The factual situation of the professional relief is

not any better either. For a detailed review of this matter, please refer to pages 7-12 of the Complaint.

When the Notice of Settlement (Compl. Exh. 3) and Settlement Agreement were sent to the Class Members, on February 17, 2004, the four exhibits, containing some of the most important details and specific information, were excluded from them, on the pretext of "privacy reasons". As described later in the EEOC Administrative Judge's (AJ's) decision of December 7, 2004, (Compl. Exh. 1, pp. 9-10), one of those exhibits, Exhibit One identified the six Class Agents and contained information about the relief offered to them. In my letters of March 6, 2004, to the AJ and the Agency, I objected to the exclusion of such important documents and information (Compl. Enclosures 1 and 2). On page 9 of the above decision, the AJ disclosed that Dr. Mon Yee, a Class Member and one of the Class Agents, also strongly objected to such exclusion, arguing that *"references to undisclosed terms and attachments is wholly inadequate to allow a class member to evaluate the resolution."* The AJ stated that the information contained in Exhibit One about the identities and relief of the six Class Agents should have been made available to the Class Members. However, after some verbal trapezes, on page 10 of his decision, he contradicted himself by deciding that the deficiency was not sufficient to warrant the issuance of an amended notice! It needs to be noted that the AJ wrote his decision almost ten months after the Notice of Settlement and Settlement Agreement, from which this crucial information was excluded, were sent to the Class Members. This constituted a major deception of the Class. If such information had been made available to the Class Members before the AJ's decision, there would have been hundreds of objections to such blatantly unfair and unreasonable distribution of relief, in favor of the six Class Agents, to the detriment and at the expense of more than 2,000 Class Members. In such a situation, it would have been almost impossible for the AJ to grant an approval of the settlement agreement. The EEOC

regulations at 29 C.F.R 1614.204(g)(4) clearly state that the notice of relief issued to the Class Members *"shall state the relief, if any, to be granted by the agency...."* The AJ's complicity with the Defendant on this important matter was totally unjustifiable and was in violation of EEOC's own regulations. Contrary to his assertion of this matter not being of sufficient importance, it was crucial for an informed and objective evaluation of the Settlement Agreement by all the Class Members and for their choice of action, on that basis, as well as for a fair, reasonable, and adequate settlement for the Class. That was the real reason for the omission and exclusion of this crucial information, from the Notice of Settlement and Settlement Agreement documents, by the Defendant. The Defendant plotted to delay the disclosure of this most important information, which involved bribery of the six Class Agents, at the expense of thousands of Class Members and their deprivation, as long as possible and until after the AJ's decision. Clearly, this unlawful secrecy and deception greatly reduced the options and opportunities of action by the Class Members against such blatantly unfair, unreasonable, inadequate, and classist-racist-elitist settlement agreement. That was the whole purpose of Defendant's secrecy and omission and exclusion of information in this matter. On the advice of the Office of Federal Operations of EEOC, in my letter of March 15, 2004, I requested the AJ and the Agency to be considered as a Named Class Member. I also informed them that I wished to intervene in the Class Action Case on behalf of the Class (Compl. Enclosure 3). The AJ and the Agency totally ignored my letters and did not reply to them. Evidently, they did not want to give me, or anyone else, any opportunity to identify, illuminate, and argue such most important matters, as this would have interfered with and exposed their plot. They wanted to keep them in the dark. The distribution of monetary and professional relief in the settlement agreement is also in clear violation of the Fourteenth Amendment of US Constitution, Section 1, Equal Protection of the Laws, as well as of Title VII Civil Rights Act.

3. Racist-discriminatory subjection of the Plaintiff to lies, deceptions, distortions, perversions, and coercions by the USDA officials: The Agency officials, especially those in its Office of the General Counsel (OGC), engaged in repeated lies, deceptions, perversions, hypocrisies, and coercions in dealing with the Plaintiff, his case, evidence and facts, issues, and arguments. These are concretely documented throughout the Complaint and its exhibits. Of special importance are Exhibits 12-17 (particularly Exhibit 12) and Exhibit 25 and pages 13, 14, 16, and 17 of the Complaint. Please see a concrete example of such lies and distortions under Item #4 below.

All through the processing of this case, at first at the stage of EEOC appeal and now the court case, the Defendant has systematically attempted to totally exclude the Class Action context of the individual case, reducing the latter to a few distorted and falsified issues, in spite of my repeated documented efforts and requests for rectification and correction of this most fundamental and important problem, created deliberately and lawlessly by the Defendant. Now, when finally forced to include the Class Action context of the individual case in its Motion, the Defendant is pretending "confusion" and great difficulty in how to address the individual case within that context, in which it was placed and integrated, to begin with, by the Defendant itself! As stated on pages 2 and 3 above, the Defendant attempted to settle the individual case, within that context, with the Plaintiff, as part of the settlement agreement. After the Plaintiff rejected the Defendant's totally unfair, unreasonable, illegal, and unacceptable $5,000 offer in exchange for withdrawing the individual case, within the context of the Settlement agreement of the Class Action Case, and has filed this Complaint in the court, now, the Defendant is claiming and pretending "confusion" about addressing and adjudication of the same individual case in the same context! The whole documented history of Defendant's tactics and actions, in this regard,

has been totally, self-evidently, irrefutably, and shamelessly dishonest and distortionist (see Compl. Exh. 12 and 12-17 for more details).

4. Grotesquely unfair, unreasonable, inadequate, and racist-discriminatory offer of payment of $5,000 to the Plaintiff for settlement of his individual employment discrimination Case #010538, as part of the Settlement Agreement of Basu APA Class Action Case. Just the back pay involved in that case at that time amounted to more than $400,000! Now, it would be a lot more. On pages 12 and 13 of the Complaint, one of the most significant and obvious lies of the Defendant is identified and described as: "And yet, the Parties placed me in Tier Three, which involves monetary relief of only $5000, in exchange for dropping the case!!! Just the back pay for either of the above positions in my Case #010538 would amount to more than $400,000. And yet, on page 10 of their *Joint motion for approval of settlement agreement* (Exhibit 11) of November 14, 2003, the Parties state, "According to the current case law, both parties contend that the Settlement Agreement meets the fair and reasonable standard as articulated in 29 C.F.R. 1614.204 because every potential Class Member is included in the proposed agreement *and the terms of the proposed agreement reflect the relief that a Class Member may have received if successful at hearing, with some negotiated compromise.*" The assertions of the Parties, in this connection, could not be any farther from the truth and facts. AJ's acceptance and approval of such false and fictitious assertions are further proofs of his almost total complacency with the Parties' lies, unfairness, unreasonableness, and classist-racist-elitist corruption. The Parties were so blinded and overwhelmed by their greed that they even violated their own classist criteria by placing a Class Member of my qualifications and experience in Tier Three, instead of Tier One. How many more did they subject to this kind of insult?"

    The above lie is a concrete example of lies and distortions, mentioned under Item #3 above. It is also a concrete example of the intertwined individual and class issues that the Defendant is pretending unable to see or fit into "Judicial Review", Individual Issues", or "Class Issues", and is asking the Court to dismiss the Complaint or order its revision-all because of its own actual or pretended incompetence! I filed numerous cases against the numerous discriminatory and racist actions of the Defendant against me and my career. Some of these cases are still active. Defendant's incredibly unfair, unethical, anti-Constitutional, and lawless actions, in connection with the settlement of my individual case, as part of the settlement agreement of the Class Action Case, are also an expression of its retaliation because of those cases, and my vigorous and prolonged activity against racism and discrimination and for the civil rights and equal opportunity in the Agency. Hence, retaliation is an important part of various violations of the Title VII Act by the Defendant.

Is there anything confusing or incoherent in the above four main issues of this Complaint? These issues have been analyzed in detail in the main body of the Complaint and its associated documents. Why not address these, instead of creating phony and distortionist diversions? What is the great difficulty in doing that? It is important to reveal and understand the intent, purpose, and effects of these tactics of the Defendant. If the case is assigned to a logician, he/she would inevitably deduce that the Defendant is abusing, misinterpreting, and misapplying certain cited precedents and rules for assaulting and butchering the facts, truth, logic, justice, civil rights laws and their meanings, and the Constitution. What a way to make a living! The Honorable Judge is requested to pay serious attention to this matter.

I believe that this case is already cut and dry. There is nothing the Defendant or its representatives can do to change or hide the various gigantic and apodictic facts, evidence, and arguments, and the violations of the above-cited sections of the Constitution and Title VII Act,

by the Defendant, documented in the Complaint File. The lies, hypocrisy, deceptions, incompetence, irrationality, dishonesty, and illegality of the Defendant in this case can only be "defended" by more of these.

In particular, the above four issues and their contents are apodictic, i-e., beyond contradiction and irrefutable. It is impossible for the Defendant to contradict or refute these or defend its indefensible actions, connected with these. To prevent further waste of time and resources of the Court, the Plaintiff, and the Defendant itself, it is hereby respectfully requested that the Honorable Judge issue a Summary Judgment in this Complaint in favor of the Plaintiff and grant him all the relief requested in the Complaint.

On pages 8 and 9 of the Motion, under "Argument", the Defendant cites several precedents and irrationally, anti-factually, and illogically interprets them in support of his Motion. However, in fact, these precedents support the Complaint and not the Motion against it! The Defendant is shooting himself in the foot here. The Defendant states:

*"A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that support his claim for relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Airlines, Inc., 216 F. 3d1111, 1117, (D.C. Cir. 2000)."*

As is self-evident in the above analysis and in the Complaint and its associated documents, the facts, their scientific-logical analysis, and legal and logical conclusions deduced from them, are so glaring and apodictic that only a blind or brain-dead person can deny their existence. This citation by the Defendant is self-defeating.

In its other citations, the Defendant states the following:

*"The Court is to treat the Complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must*

*grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979). However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the Complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at \*1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).*

From the above citations, the Defendant draws the bizarre, anti-factual, and anti-logical conclusion that, *"Applying these standards demonstrates that Plaintiff's Complaint should be dismissed."*! Again, the Defendant is shooting himself in the foot here and citing precedents that support the Complaint and not his Motion! The Plaintiff thanks the Defendant for this free service. In the Complaint and its exhibits, there are apodictic facts and irrefutable factual allegations, from which inferences and legal conclusions have been drawn scientifically and logically. As such, these inferences and conclusions are also irrefutable. All the allegations, inferences, and conclusions are impeccably backed up by facts. That is the reason for the file of this Complaint to be relatively voluminous. The Complaint was prepared in such a way that it would constitute a complete case, with all the facts and evidence documented in it. The Defendant knows this and therefore is resorting to these pathetic, petty, and bizarre generalizations, tactics and conclusions, making vague and general statements, without correlating them to, or specifically addressing or refuting, these specific facts, factual allegations, inferences, and legal conclusions.

The Complaint and its statements, facts, evidence, inferences, and conclusions are as definite and clear as these can be. This is self-evident in the Complaint as well as demonstrated in this document. It is the Defendant who is spraying fog and mud on these, pretending not to see them, and expecting to blind the Court also.

On pages 7 and 8 of the Motion, the Defendant states, *"Plaintiff stated that the purpose of describing his individual subjugation (sic) to various injustices [is] to try to illustrate or illuminate such facts in general, which are relevant to the Class as a whole." ID. At 13, He further stated "I know that there are a great number of victims of such injustices of the agency. However, I do not know the actual details of their experiences. Other wise I would have described them as well." Id. 13-14. Despite stating that he did not know the injustices experienced by other agency employees, Plaintiff later stated that he also has USDA Class Action Case #020077, EEOC Appeal Docket #01A50945 with which his individual case, #010538, is associated. Compl. At 17."*

There are a few errors and omissions in the above quotation. However, in spite of those, how can my latter statement be interpreted to contradict the former? The Defendant seems to be implying that it does! It does not make any sense. From the Agency's own reports, news media articles, articles published on the web site of USDA Coalition of Minority Employees (**www.agcoalition.org**), letters of US Congressmen, Congressional hearings, and EEOC reports, I know, in general, that there are a great number of minority victims of racist-discriminatory practices and injustices of the Agency. However I do not know the specifics or details of their individual stories. What is the problem, where is the contradiction in these statements that the Defendant is implying?

Following is my complete and correct statement that the Defendant has quoted above:

*"I have described my individual subjection to various injustices to try to illustrate and illuminate such facts in general, which are relevant to the Class as a whole. By describing these, I am not asking or expecting any pity or favors. I know that there are a great number of victims of such injustices of the agency. However, I do not know the actual details of their experiences. Otherwise, I would have described them as well. All these are important data*

*and information in such cases and therefore their inclusion in such analyses is important."* Compl. pp. 13-14.

In its Motion, the Defendant has not only defied all logic and facts but also all common sense and has attempted to use some precedents and rules for that defiance, disgracing them in the process. It can barely hide its racist attitude towards the Plaintiff. On page 6 of its Motion, the Defendant refers to the Plaintiff as a *"self described Asian American"*. The Plaintiff is a US citizen of Asian origin and is officially classified as an Asian American in this country. During the great political repression of 1950s, at the Senator Joseph McCarthy's House Un-American Activities Committee hearings, someone, who was being persecuted and subjected to that, had asked the Senator, "Sir, do you have any shame?" I also hereby ask the Defendant and his representatives, "Sirs, do you have any shame?"

**Learned Ignoramuses**

The great Spanish philosopher Ortega y Gasset has described the modern "experts" and "specialists" as *Learned Ignoramuses*. He made a detailed analysis of their character structure, "knowledge", and role in society. He called them the *Learned Ignoramuses* because they know a lot in their tiny little areas of specialization but are almost totally ignorant of other areas of knowledge as well as of the reality as a whole. And yet, they pretend knowledge even in areas that they know nothing about! This problem has been increasing with the development of modern civilization and its cult of one-sided specialization. At first, they could not see the forest for the trees. Now, they cannot see even the tree for a leaf! The great American philosopher and naturalist of the Nineteenth Century, Henry David Thoreau had already foreseen such developments, in which people were becoming culturally enslaved instruments of exploitation and technocratic manipulations. He had stated, *"Slavery exists wherever men are bought and sold, whenever a man allows himself to be made a mere thing or a tool, and surrenders his inalienable rights of reason and conscience. Indeed, this slavery is more*

*complete than that which enslaves the body alone."* This was a prophetic insight. Such complete slavery is now widespread among the professionals and experts of all kind. Long before Thoreau, Jesus Christ had asked, *"What is a man profited if he has gained the whole world and lost his soul?"* One wonders what he would say now when so many are selling their souls as well as "reason" and "conscience" for pennies!

The problems of racism and discrimination are complex and are rooted in many areas of social reality and social sciences, like political economy, politics, economics, psychology and mass psychology, history, culture etc. Attorneys are, in general, ignorant of these areas and of the nature and origin of racism and discrimination in them. They are rather narrowly specialized legal technicians. And yet, they talk and act as if they are the authorities in these matters! Even when they see someone's superior knowledge in these areas, they show no respect for it. Neither are they ashamed of their own ignorance. In fact, they are so ignorant that they do not even know that they don't know! In this Case, they have been playing football with the issues of justice, truth, law, and Constitution that are involved in it-disgracing and desecrating all these-and trying to turn them into their opposites.

I am an interdisciplinary researcher and writer in various areas of biological and social sciences, and, in addition to research and publication in biosocial and psychological areas in some interdisciplinary scientific journals, have done in-depth studies of the problems of racism, discrimination, and equal opportunity-in their interrelated bases in history, culture, political economy, politics, economics, and psychology and mass psychology-in this country in general and the USDA in particular. I have included some of that knowledge in my analyses of these problems in the USDA. The attorneys, handling this case, seem to have no understanding or appreciation for such information and knowledge, the result of research and publication of some of best social scientists in this country. Instead, they seem to be totally confused and bewildered by it. In legal cases, involving such matters, the incorporation and consideration of

such knowledge should be of fundamental importance, as it is essential for the understanding, illumination, and adjudication of various issues and problems.

**Conclusion**

In view of the above concrete and specific analysis of the Defendant's Motion for the dismissal or revision of the Complaint, and of this whole matter, as well as the constant bad faith of the Defendant, exhibited and documented throughout the processing and adjudication of this case, and his repeated reluctance and inability to furnish an answer to the Complaint-based in the indefensibility of his unjust, unreasonable, corrupt, racist, and discriminatory actions and violations of the Constitution and civil rights laws- the Plaintiff respectfully submits that the Court should:

1. Deny and disregard the Defendant's Motion for the dismissal or a more definite statement of the Complaint.

2. Issue a Summary Judgment in favor of the Plaintiff, granting him the relief demanded in the Complaint.

Respectfully submitted **this 1st day of December, 2006**

*Fazal Rahman*

Fazal Rahman, Ph.D., Plaintiff
P. O. Box 1422
Glendale, AZ 85311
Email: Unpollutedfaz@aol.com
Telephone: (623)847-5853

**Certificate of Service**

I hereby certify that copies of *"Request to deny and disregard the Defendant's Motion to dismiss or for a more definite statement. Plaintiff's Motion for a Summary Judgment"*, have been sent on December 1, 2006, by Priority Mail, with Delivery Confirmation Request, to the following:

1. Clerk's Office
   US District Court for the District of Columbia
   US Courthouse
   333 Constitution Avenue, NW
   Washington, DC 20001

2. Oliver W. McDaniel, Assistant US Attorney
   Civil Division, US Attorney's Office
   555 Fourth St., NW
   Washington, DC 20530

*Fazal Rahman*
Fazal Rahman, Ph.D., Plaintiff