## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FAZAL RAHMAN, Ph.D.,

      Plaintiff,

          v.                           Civil Action No. 06-1283  (JDB)

MIKE JOHANNS, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE,

      Defendant.

## MEMORANDUM OPINION

Plaintiff Fazal Rahman, proceeding pro se, brings this action alleging that he was not selected for two positions at the U.S. Department of Agriculture ("USDA") because of his race and also challenging the lawfulness of an administrative class action settlement agreement resolving claims brought under Title VII  of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by a broader class of Asian/Pacific American employees against the USDA.  Pending before the Court are plaintiff's motion for recusal of the undersigned judge, defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for a more definite statement, plaintiff's cross-motion for summary judgment, and plaintiff's motion to stop and reverse implementation of the class action settlement agreement.  For the reasons explained below, the Court will deny plaintiff's motion for recusal, finding no provision in the governing statute, 28 U.S.C. § 455, that warrants recusal.  The Court also concludes that the complaint satisfies the notice pleading requirements of Fed. R. Civ. P. 8(a), and thus will deny defendant's motion to dismiss and motion for a more definite statement.  Finally, plaintiff's motion for summary judgment and motion to stop and reverse implementation of the settlement agreement fail to provide a sufficient basis for the relief requested, and thus will also be denied.

## **BACKGROUND**

The following factual background is taken from plaintiff's complaint and the exhibits attached thereto.  Plaintiff Fazal Rahman, an American of Pakistani descent, has an interdisciplinary background in agricultural, biological, and social sciences, and has served in high-level positions within the USDA and abroad, including Director of the Grain Legume Program for the Amazonian territory and Director of the National Tree Improvement Center in Zambia.  See Compl. at 12.  In 2000, he applied for two high-level positions within the USDA: Agricultural Administrator (ARS-X1W-1040), a GS-15 position, and Associate Deputy Administrator (ARS-SES-00-12), a position within the Senior Executive Service.  Id.  Plaintiff alleges that he was not considered for the positions, while white candidates who were less qualified were considered instead.  Id.  Plaintiff then filed an administrative employment discrimination complaint ("USDA Case No. 010538") to complain of the nonselections.  Id.

Plaintiff's administrative complaint was held in abeyance for four years because he was considered a potential member of a proposed class in a separate administrative action pending before the Equal Employment Opportunity Commission ("EEOC"), Basu v. Veneman, Agency No. 00190 ("Basu class action").  Id. at 12 & Ex. 7, at 1, 7.[1]  In that administrative class action, six class agents sought certification of a proposed class of USDA employees of Asian and Pacific

---

[1]  The complete history of the Basu proceedings is not set forth in the complaint, but the EEOC decisions at issue are attached to plaintiff's complaint.  These consist of the decision of the EEOC administrative judge granting final approval of the settlement agreement (Exhibit 1); the decision of the EEOC Office of Federal Operations dismissing plaintiff's appeal (Exhibit 7); and the decision of that office denying plaintiff's motion for reconsideration (Exhibit 2).  For ease of reference, the Court will refer to these decisions solely by their exhibit number.

The Court further notes that these documents refer to the class at issue at various times as "Asian/Pacific Islander," "Asian," and "Asian/Pacific American," with plaintiff utilizing the latter term.  When referring to plaintiff's claims, the Court will use the term "Asian/Pacific American," but will use the specific term used by the EEOC when referring to EEOC documents.

Islander heritage who, since February 1994, had allegedly been discriminated against in hiring, promotion, and other USDA practices.  Id. Ex. 7, at 1.

EEOC proceedings over the proper definition of the class ensued, and ultimately resulted in a class defined as "all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected."[2] Compl. at 2 & Ex. 3 at 2 (EEOC Notice of Settlement) (emphasis added).  Under the modified class definition, plaintiff believes he is excluded from the Basu class action because he was, by then, no longer a USDA employee. See Compl. at 3.

On October 31, 2003, the Basu parties entered into a settlement agreement, which was preliminarily approved by an EEOC administrative judge on January 27, 2004.  Compl., Ex. 1 at 2.  Under the proposed settlement agreement, the USDA would provide injunctive relief in the form of development, scholarship, and job fair programs covering a three-year period.[3]  Compl. at

---

[2] In the early stages of the Basu proceedings, an EEOC administrative judge determined that the proposed class "failed to meet the procedural requirements for certification" set forth at 29 C.F.R. § 1614.204(a)(2). Compl., Ex. 7 at 1-2.  Arun Basu, the lead class agent, appealed that decision to the EEOC Office of Federal Operations ("OFO").  Id.  The OFO reversed the administrative decision denying certification, modified the proposed class, and conditionally certified a class comprised of "all Asian employees of the [USDA] who were eligible for but have not received promotions and all Asian persons who have applied for positions with the [USDA] but have not been selected," but noting that the scope of the class was subject to further amendment.  Id., Ex. 1 at 2.  The class definition was later limited to "current" USDA employees.

[3] The EEOC administrative judge described these programs as follows.  See generally Compl., Ex. 1 at 3-4.  First, a Development Opportunity Placement Program would require certain subagencies within USDA to provide at least two opportunities per year for eligible and qualified employees to obtain detail assignments, temporary promotions, or developmental assignments, with class members receiving priority consideration.  Id.  Second, a Graduate Scholarship Program would fund 36 scholarships for masters and doctoral students within certain subagencies.  Id. at 4.  Third, an agency-wide job fair would be held at four regional locations for

(continued...)

11-12 & Ex. 1 at 3-4.  Individual relief would be based on a potential member's placement in one of the following four categories and would break down monetarily as follows:

Tier One:  Six class agents due to receive approximately $632,000 in backpay and compensatory damages, $350,000 for reasonable attorney's fees, and certain promotions, reassignments, and/or training.

Tier Two:  22 remaining class agents due to receive a total of $372,500, plus attorney's fees not to exceed $25,000 for each of the five class agents with pending administrative complaints, and "all attorneys fees" for two class agents with pending district court complaints.

Tier Three:  Individuals with pending administrative complaints eligible for a $5,000 lump-sum individual payment or, alternatively, an expedited hearing on the individual complaint along with the programmatic injunctive relief.  Two individuals with pending district court cases each due to receive a lump-sum individual payment of $7,500 and attorney's fees.

Tier Four:  All other class members who did not file individual complaints of discrimination eligible only for the programmatic injunctive relief.

See Compl. at 7-11 & Ex. 1 at 4-6.  Plaintiff estimates that there are 58 individuals in Tiers One, Two, and Three, and 1,972 individuals in Tier Four.  Compl. at 7-10.  Plaintiff was notified that he fell within Tier Three and would thus be offered a $5,000 lump-sum payment to resolve his pending administrative complaint, No. 010538.  Id. at 11-12 & Ex. 8, at 7-8.  Plaintiff, however, believes he should be awarded over $400,000 in backpay.  Id.  On December 4, 2004, following notice to potential class members and the review of objections to the settlement, including objections from plaintiff, the EEOC administrative judge concluded that the settlement agreement was "fair, adequate, and reasonable to the class as a whole," and, pursuant to 29 C.F.R.

---

[3](...continued)
employment in job categories where the USDA's Asian/Pacific Islander population is statistically underrepresented.  Id. at 4.  Fourth, Affirmative Employment Plans would be developed to generally address class member issues, and Individual Development Plans would be developed that, among other things, address appropriate training tailored to that individual's job performance.  Id.

§ 1614.204(g)(4), granted final approval of the settlement agreement.  Compl., Ex. 1 at 1-2.

Plaintiff then administratively appealed the final approval of the settlement agreement, including the modification of the class definition.  Compl. at 3 & Ex. 4 (Letter from Rahman to EEOC, dated January 4, 2005).  In his appeal, he argued that the settlement agreement failed to protect his rights under Title VII, and the rights of others, based on two main alleged flaws:  first, the modified class definition unlawfully excluded former USDA employees of Asian/Pacific American heritage from the class, and second, that it unfairly and discriminatorily granted monetary and professional relief to the six class agents, to the detriment of all other affected Asian/Pacific American employees.  See Compl. at 3-5 & Ex. 4.  The EEOC Office of Federal Operations denied plaintiff's appeal on May 3, 2005, finding that plaintiff was not a class member entitled to relief, but at the same time recognizing that the USDA and class counsel considered plaintiff to be covered by the terms of the settlement agreement.  See Compl. at 3 & Ex. 7 at 7.  It later denied plaintiff's request for reconsideration of its decision, and advised plaintiff that he could file a civil action in an appropriate United States District Court.  Compl. at 1 & Ex. 2.

On September 30, 2005, plaintiff filed the complaint under review in the United States District Court for the District of Arizona.  Plaintiff requests an order enjoining implementation of the Basu settlement agreement, a declaration that the agreement is void, and an order requiring the USDA to restore the original class definition and negotiate a fair agreement with a new set of class agents.  Compl. at 17.  He also requests backpay for the higher of the two positions at issue, and compensatory and punitive damages.  Id. at 18.  On July 21, 2006, the case was transferred to this district upon defendant's motion. See Rahman v. Johanns, No. CV-05-3010, slip op. at 1 (D. Ariz. June 21, 2006).

<u>ANALYSIS</u>

**I.     Plaintiff's Motion for Recusal**

Plaintiff moves to recuse the undersigned on the ground that his impartiality "might reasonably be questioned" under 28 U.S.C. § 455(a) due to the undersigned's previous service from 1980 to 1997 in the United States Attorney's Office for the District of Columbia ("U.S. Attorney's Office"), the government office now representing defendant.  See Pl.'s Mot. for Recusal at 4.  However, under the recusal statute and the case law addressing the need for recusal based on former governmental employment, the Court concludes that recusal is not required or warranted.

The governing statute provides, in relevant part, that:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:
. . .
(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

28 U.S.C. § 455(b)(3).  A "proceeding" is defined to include "pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1).

Plaintiff relies exclusively on the "might reasonably be questioned" clause of subsection (a) to support his request for recusal, without considering the applicability of subsection (b)(3), the provision governing recusal based on a judge's former governmental employment. Subsection (a), however, cannot be read in isolation, but instead should be read consistent with the enumerated protections of subsection (b).  See Liteky v. United States, 510 U.S. 540, 552-3, 553 n.2 (1994) ("when one of those aspects addressed in (b) *is* at issue, it is poor statutory

construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires it") (emphasis in original).  Thus, subsection (b)(3) has been construed to govern recusal where the alleged appearance of conflict arises from former governmental employment.  See Baker & Hostetler LLP v. U.S. Dept. of Commerce, 471 F.3d 1355, 1355 (D.C. Cir. 2006).  Indeed, it is commonplace for judges to serve in the government prior to appointment to the federal bench, and section 455(b)(3) reflects Congress's studied response to this circumstance.  See id. at 1357.

Under section 455(b)(3), recusal is required based on a "personal participation" rule (id. at 1357) -- that is, where the judge, in his former position, "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case or controversy."  28 U.S.C. § 455(b)(3).  In contrast, the recusal standard advocated by plaintiff would require recusal based more broadly on an "associational" standard, that is, the bare fact of a judge's employment with the U.S. Attorney's Office.  That position is inconsistent with the plain language of subsection (b)(3), and also is undermined by Congress's decision to limit an associational standard for recusal to private law firm employment, a decision manifest in subsection (b)(2).[4]  Baker & Hostetler LLP, 471 F.3d at 1357-58.  Thus, in Baker & Hostetler LLP, Judge Kavanaugh of this Circuit concluded that, where a decision of the executive branch was under review, his recusal was not required based on his executive branch service because he had taken no part in nor expressed opinions concerning the merits of the case at issue.  Id. at 1358.

---

[4]  Subsection (b)(2) provides that recusal is required "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it."  28 U.S.C. § 455(b)(2) (emphasis added).  Even under this associational standard, the matter must have been under consideration by the firm while the judge was still associated with the firm.

Other circuits have considered similar motions to recuse district court judges who served in a U.S. Attorney's Office prior to appointment to the federal bench and, consistent with the foregoing analysis, have concluded that actual participation in the case at issue is required to support recusal.  See e.g., United States v. Ruzzano, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification."); Mandum v. Hargett, 67 F.3d 80, 83 (5th Cir. 1995) ("§ 455(b)(3) does not mandate recusal unless the former government attorney has *actually* participated in some fashion in the proceedings.") (emphasis added); Levine v. Gerson, 334 F. Supp. 2d 376, 377 (S.D.N.Y. 2003).

As to the case currently under review, the Court observes that the undersigned did not participate at any stage of either plaintiff's administrative proceedings (that is, USDA No. 010538) or the related proceedings in the Basu administrative class action case.  Indeed, both of those proceedings post-date the undersigned's employment at the U.S. Attorney's Office.  The Basu class action proceeding was filed with the EEOC on November 18, 1999, over a year after the undersigned left the U.S. Attorney's Office for private practice.  Plaintiff's alleged nonselection for the two senior-level positions at the USDA occurred the next year, in 2000.  Thus, it should come as no surprise that the undersigned also did not issue any opinion on the merits of the present case or the Basu case while employed by the U.S. Attorney's Office.  Therefore, recusal is not required.

It should be noted that civil cases, including many Title VII discrimination cases, are routinely defended by the U.S. Attorney's Office and have been handled by the undersigned as a matter of course since appointment to the bench in 2001.  Thus, even if the catch-all standard in subsection (a) were considered in isolation from (b)(3) -- and recusal were thus considered based solely on whether a judge's "impartiality might reasonably be questioned" -- the Court would find

no basis for recusal.  Cf. Baker & Hostetler LLP, 471 F.3d at 1358 (noting the possibility that

"rare and extraordinary circumstances arising out of prior government employment -- but not

covered . . . by § 455(b)(3) -- could occur and support recusal under § 455(a)").  Accordingly,

plaintiff's motion for recusal will be denied.

## II.    Defendant's Motion to Dismiss or, in the Alternative, for a More Definite Statement

Having resolved the matter of recusal, the Court next turns to defendant's motion to

dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under

Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement under Fed. R. Civ. P.

12(e).[5]  Defendant moves to dismiss the complaint on the ground that the allegations are too

"incoherent and confusing" to satisfy the minimal notice pleading requirements of Fed. R. Civ. P.

8(a).  See Def.'s Mem. at 1, 9-10.  Defendant contends that plaintiff has integrated the allegations

concerning the Basu class action settlement and the allegations concerning his nonselection for the

GS-15 and SES positions in such a manner as to "leave[] defendant wondering whether [p]laintiff

is advancing a class action claim or a simple claim for individual relief."  Id. at 9.  In response,

plaintiff argues that his complaint is clear and unambiguous in "seeking a judicial review of the

Basu class action settlement agreement and, as part of that, it is also seeking a fair, adequate,

reasonable, and non-discriminatory resolution of the individual case," that is, USDA Case

No. 010538 filed in 2000.  Pl.'s Mem. at 3, 5.  Plaintiff also notes that his complaint invokes Title

VII and the Equal Protection Clause of the Constitution to support his claims.  Id. at 7.

---

[5]  For ease of reference, the Court will refer to defendant's memorandum in support of the motion to dismiss as "Def.'s Mem." and plaintiff's memorandum in opposition and cross-motion for summary judgment as "Pl.'s Mem."

### A. Standard of Review

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted). Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief,'" id. at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

The notice pleading rules, however, are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics &

10

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968

(D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127 S. Ct. at 1965).

The plaintiff must be given every favorable inference that may be drawn from the allegations of

fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions

cast in the form of factual allegations."  Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C.

Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing

Papasan, 478 U.S. at 286).

### B. Discussion

Defendant moves to dismiss based, in part, on the asserted problem of discerning a

coherent legal theory from the complaint.  See Def.'s Mem. at 9-10.  However, "[t]he liberal

concepts of notice pleading embodied in the Federal Rules do not require the pleading of legal

theories," but instead require only the pleading of basic factual allegations.  Empagran S.A. v. F.

Hoffman LaRouche, Ltd., 388 F.3d 337, 341 (D.C. Cir. 2004); accord Hanson v. Hoffman, 628

F.2d 42, 53 (D.C. Cir. 1980); Lemmons v. Georgetown Univ. Hosp., 241 F. R.D. 15, 28 (D.D.C.

2007); Gen. Elec. Co. v. Johnson, 362 F. Supp. 2d 327, 333 (D.D.C. 2005); see also Wynder v.

McMahon, 360 F.3d 73, 77 (2d Cir. 2004) ("federal pleading is by statement of claim, not by legal

theory . . . [therefore,] Rule 8's liberal pleading principles do not permit dismissal for failure in a

complaint to cite a statute, or to cite the correct one . . . . Factual allegations alone are what

matters.") (internal quotations omitted).  The rationale for this liberal notice pleading standard is

that "when a party has a valid claim, he should recover on it regardless of [a] . . . failure to

perceive the true basis of the claim at the pleading stage, provided always that a late shift in the

thrust of the case will not prejudice the other party in maintaining a defense upon the merits." 5 CHARLES ALLEN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219, at 282 (3d ed. 2004). Thus, under the federal rules, a plaintiff can survive the pleading stage without a "carefully articulated legal theory." Id. at 281. But "it will be hard for the plaintiff[] . . . to present a convincing case at trial or on a summary judgment motion without such a theory."[6] Id.

The Court finds two claims readily discernible from the complaint: (1) individual claims of discrimination brought under Title VII and the Equal Protection Clause of the Constitution, based on plaintiff's nonselection for the two positions he applied for in 2000; and (2) a claim that approval of the settlement agreement, including the class definition, in the Basu case violates Title VII and the Equal Protection Clause. See Compl. at 3-5, 12. This description is derived from the face of the complaint, and is consistent with plaintiff's own characterization of his complaint in subsequently filed memoranda. See Pl.'s Mem. at 3 (reiterating that plaintiff "is seeking a judicial review of the Basu class action settlement agreement and . . . is also seeking a fair, adequate, reasonable, and non-discriminatory resolution of [his] individual case.").

To support his individual discrimination claims, plaintiff sets forth facts supporting an inference that racial discrimination motivated his nonselections. He alleges that he applied for the positions, that he was highly qualified but was "not even considered," and that other less qualified

---

[6] Plaintiff has asked this Court "to determine and decide which . . . [legal] categories are applicable to this case." Pl.'s Opp. to Mot. to Dismiss at 8. Although a plaintiff can meet the liberal notice pleading standards of Rule 8 without espousing crystallized legal theories, courts do not formulate a plaintiff's legal theories for him.

The Court also notes that defendant speculates that plaintiff is perhaps bringing his claim concerning the Basu settlement agreement pursuant to the Administrative Procedure Act. See Def.'s Opp. to Pl.'s Mot. to Stop and Reverse the Settlement Agreement at 6. However, plaintiff has limited his claims thus far to Title VII and the Equal Protection Clause, and the Court will consider a Administrative Procedure Act claim only when and if raised by plaintiff.

candidates were granted consideration.  Compl. at 12.  He further alleges that "minority representation . . . is extremely low," that "almost all the current employees in these higher level positions in the [USDA] are Whites," and that the USDA has used the prevalence of whites at the senior level to perpetuate the selection of white applicants.  Id.  The complaint cites generally to Title VII and the Equal Protection Clause in support of his claims.  Compl. at 3-5, 15.  These factual allegations suffice to meet the minimal notice pleading requirements of Fed. R. Civ. P. 8(a).  Like other complaints that have been sustained under Rule 8, the complaint describes the events surrounding the adverse employment action supporting an inference of discrimination, provides the relevant dates, and includes the relevant nationalities.  See Swierkiewicz, 534 U.S. at 514.  The complaint thus provides sufficient notice of plaintiff's claims of discriminatory nonselection.

Turning to plaintiff's claim challenging the lawfulness of the settlement agreement, he makes the following factual allegations.  He alleges that the settlement agreement adopts a class definition that improperly excludes former USDA employees who suffered discrimination from the scope of its coverage, that six class agents have received a disproportionate share -- by his estimate, 58 percent -- of the monetary relief, and that the injunctive relief is of little practical value to any class members.  Compl. at 2-7, 11-12.  He estimates that individuals with pending administrative complaints, like himself, will receive only 1.5 percent of the monetary relief, and that the $5,000 lump-sum payment offered to him under the settlement agreement was unreasonable, unfair, and discriminatory.  Id. at 9, 12.  He alleges that, based on these flaws, the settlement agreement runs afoul of Title VII, including implementing regulations at 29 C.F.R. §

1614.204,[7] and the Equal Protection Clause.  Compl. at 2, 4-6, 12.  Thus, plaintiff has provided

adequate notice that he intends to challenge the lawfulness of the settlement agreement as a

violation of Title VII and the Constitution.

Defendant's inadequate notice argument ultimately centers on the claim challenging the

Basu settlement, characterizing the complaint as unclear on whether plaintiff intends to bring a

class action on behalf of all other affected class members.  Def.'s Mem. at 9; Def.'s Reply Mem. at

2.  Defendant points out that plaintiff uses the label "class issues" several times throughout his

complaint and that he mixes his individual grievances with those of the class.  Def.'s Mem. at 9-

10.  The complaint's use of the label "class issues" and various other references to class relief

certainly contribute to that confusion and indeed, plaintiff's own response sends mixed signals on

this point.  See Pl.'s Supplemental Mem. at 4 ("Is it not totally obvious that I am the only Plaintiff

officially listed on the Complaint documents?  Is it not equally obvious that the case is on behalf

of all the other APA [Asian/Pacific American] Class Members of the Basu [case] . . . as well as

those who were illegally . . . denied . . . Class status?").  Liberally construed, however, the

complaint unambiguously names only one plaintiff -- Fazal Rahman -- who challenges the Basu

settlement agreement and, despite the fact that the relief requested would have a class-wide

impact, he does not purport to have the authority to represent any other plaintiff, nor has he sought

class certification from the Court, which at this juncture is barred in any event.  See Local Civil

Rule 23.1 ("Within 90 days after the filing of a complaint in a case sought to be maintained as a

class action . . . the plaintiff shall move for a certification under Rule 23(c)(1) [of the] Federal

---

[7]  This regulation provides that an EEOC administrative judge shall vacate any agreement reached by the parties "if the administrative judge finds that the proposed resolution is not fair, adequate and reasonable to the class as a whole." 29 C.F.R. § 1614.204(g)(4).

Rules of Civil Procedures, that the case may be so maintained.").  The Court thus construes

plaintiff's references to "class issues" as referring to issues arising from the class definition and the

allegedly unlawful class action settlement agreement that excluded plaintiff.  Again, this

interpretation is consistent with plaintiff's own description of his complaint as seeking "judicial

review of the Basu class action settlement agreement," and plaintiff's representation that he is "the

only [p]laintiff."  Pl.'s Mem. at 3.

The Court next considers defendant's motion, in the alternative, for a more definite

statement under Fed. R. Civ. P. 12(e).  Rule 12(e) motions will be granted if a complaint "is so

vague or ambiguous that a party cannot reasonably be required to frame a responsive

pleading . . . ." Fed. R. Civ. P. 12(e).  Given the liberal nature of the federal pleading standards,

Rule 12(e) motions are typically disfavored by courts. Hilska v. Jones, 217 F.R.D. 16, 25 (D.D.C.

2003); see Burnett v. Al Baraka Inv. and Development Corp., 274 F. Supp. 2d 86, 110 (D.D.C.

2003) ("Normally, of course, the basis for requiring a more definite statement under Rule 12(e) is

unintelligibility, not mere lack of detail.") (citations omitted); Greene v. District of Columbia, No.

91-0081, 1991 WL 176141, at *1- 2 (D.D.C. Aug. 28 1991) (same).  Because plaintiff has

provided a sufficient description of the factual allegations supporting both his nonselection claims

and his broader claim challenging the Basu settlement agreement to comply with Fed. R. Civ. P.

8, and the allegations are readily understandable, a more definite statement under Rule 12(e) will

not be required.

Contrary to defendant's contention, a different result is not suggested by Gilbert v.

Chertoff, No. 05-2128, 2006 WL 2793169 (D.D.C. Sept. 28, 2006).  Unlike the present case,

Gilbert involved a complaint that did not meet Rule 8 standards because plaintiff premised his

discrimination claim on general allegations of systematic discrimination and did not specify the

nonpromotions he challenged. Id. at *3. The court held that, in light of those defects, the complaint failed to satisfy the notice pleading requirements of Rule 8. Id. In this case, plaintiff has specified in his complaint which nonselections form the basis of his discrimination case -- his nonselection for the Agricultural Administrator and Associate Deputy Administrator positions. Compl. at 12. Moreover, as discussed above, plaintiff has alleged facts that, if proven true, may support an inference of discrimination, and thus has satisfied the notice pleading standards of Rule 8. Accordingly, the Court will deny defendant's motion for a more definite statement.

## III. Plaintiff's Motion for Preliminary Injunction

The Court now turns to plaintiff's motion to "order the [USDA] to stop and reverse the implementation of the settlement agreement" pending this court's decision ("Pl.'s Mot. for Order"). Defendant correctly recognizes that this motion is, in essence, a motion for preliminary injunction on plaintiff's claim challenging the lawfulness of the settlement agreement. Def.'s Opp. to Pl.'s Mot. for Order at 1, 4-5. The Court will thus apply the standards applicable to requests for injunctive relief.

### A. Standard of Review

Injunctive relief, not usually available in employment cases, is an extraordinary remedy and must be sparingly granted. Sampson v. Murray, 415 U.S. 61, 90 (1974) (citing Va. Petrol. Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)); Varicon Int'l v. Office of Pers. Mgmt., 934 F. Supp. 440, 442 (D.D.C. 1996). In order to prevail on a motion for a preliminary injunction, a movant must demonstrate (1) a substantial likelihood of success on the merits, (2) that he would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir.

16

2006) (citations omitted); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir.1998). These four factors should be balanced, and a "particularly strong" showing in one area can justify an injunction "even if the showings in other areas are rather weak." Chaplaincy, 454 F.3d at 297; see also Guam Indus. Services, Inc. v. Rumsfeld, 383 F. Supp. 2d 112, 116 (D.D.C. 2005) (noting that the four factors "should be balanced on a sliding scale," and that "a party can compensate for a lesser showing on one factor by making a very strong showing on another factor"). The movant must, however, "demonstrate at least some injury," Chaplaincy, 454 F.3d at 297 (internal quotations omitted), "since the basis for [granting] injunctive relief in the federal courts has always been [a showing of] irreparable harm," CityFed Fin. Corp. v. OTS, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting Sampson , 415 U.S. at 88) (internal quotations omitted).

**B. Discussion**

Plaintiff's initial motion contends that implementation of the Basu settlement agreement is improper based solely on the pendency of this litigation, but in subsequent filings he explains that he relies on his complaint and the exhibits attached thereto to demonstrate his likelihood of success on the merits and the satisfaction of the remaining factors.   See Pl.'s Mot. for Order at 1-2; Pl.'s Response to Def.'s Reply at 1-8.  Defendant contends that plaintiff has offered only conclusory allegations in support of his motion, and thus has failed to show he has satisfied any of the four factors required for the issuance of a preliminary injunction. See Def.'s Opp. to Mot. for Order at 6.  The Court has reviewed the submissions and concludes that the extraordinary relief requested by plaintiff is not warranted.

First, plaintiff has failed to demonstrate that he has a substantial likelihood of success on the merits.  He makes only conclusory allegations as to the unlawfulness of the agreement.

Assuming arguendo that the Court has the authority to evaluate the lawfulness of that agreement,[8] the present record does not contain sufficient information for that evaluation to occur -- indeed, neither the settlement agreement nor documents explaining the basis for the final class definition are even in the present record.[9]   Furthermore, many factors are balanced in determining whether a class action settlement agreement may be approved, and the outcome of such an assessment on the present record is far from clear.  See Thomas v. Albright, 139 F.3d 227, 231-33 (D.C. Cir. 1998) ("The court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case.  The court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial.") (citation omitted); accord Luevano v. Campbell, 93 F.R.D. 68, 89-90 (D.D.C. 1981).  Contrary to plaintiff's suggestion, the law does not deem class action settlement agreements unfair based solely on a greater award of monetary relief to class representatives.  See Thomas, 139 F.3d at 232; Luevano, 93 F.R.D. at 89.  Therefore, plaintiff's conclusory allegation that the settlement agreement is unlawful fails to satisfy the requirement of likelihood of success on the merits.

Plaintiff also has failed to make any showing that he would suffer irreparable harm if the

---

[8]  Defendant suggests that review of the settlement agreement is limited to review of the EEOC's approval thereof, and also questions whether review should be under the Administrative Procedure Act, instead of Title VII.  See Def.'s Opp. to Pl.'s Mot. for Order at 6.  Plaintiff does not explain which provision of Title VII would authorize the Court to set aside the settlement agreement.

[9]  Indeed, the record contains conflicting information on the USDA's interpretation of the settlement agreement, namely, whether former employees like plaintiff may be covered even under a definition that, on its face, refers to "current" employees.  Compare Ex. 1 at 3 (final decision approving settlement agreement explaining that temporal scope of the agreement covers employees who filed administrative complaints from 1994 to September 2, 2003) and Ex. 13 (letter from USDA to plaintiff dated June 2, 2005, identifying him as a member of Tier Three). with Ex. 7 (OFO dismissal of plaintiff's appeal stating that he is not a member of the class because he is not a current employee).

<u>Basu</u> settlement agreement is implemented.  Plaintiff does not specifically identify the irreparable

harm he suffers, but his complaint suggests that the harm suffered is the absence of a monetary

award for backpay and compensatory damages.[10]  <u>See</u> Compl. at 12, 18.  As defendant correctly

notes, "[t]he possibility that adequate compensatory or other corrective relief will be available at a

later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

<u>Moore v. Summers</u>, 113 F. Supp. 2d 5, 24 (D.D.C. 2000) (citing <u>Va. Petrol. Jobbers Ass'n</u>, 259

F.2d at 925).  Moreover, it is difficult to see how plaintiff would be harmed by the payments that

have been made to other class members pursuant to the settlement agreement or by

implementation of the programmatic injunctive relief within USDA, since he is no longer an

employee there.

In contrast, an injunction would substantially harm other interested parties, namely, the

recipients of the monetary awards and those who benefit from the programmatic injunctive relief

under the settlement. The deputy administrator of the USDA has submitted a declaration stating

that the agency already has paid out over $2,000,000 in monetary relief and has expended other

funds on implementation of the Development Opportunity Placement Program, the Graduate

Scholarship Program, and the job fairs.  Declaration of James H. Bradley ¶ 5.  The deputy

administrator further explains that:

> It would be exceedingly burdensome, if not impossible, for USDA and its sub-
> Agencies to 'reverse implementation' of this historic administrative Class Action
> settlement.  Any reversing of implementation would also necessarily include the
> return of monies by Class Members which, again, would be exceedingly
> burdensome if not impossible, but against all goodwill established between the
> parties in the negotiation and settlement of a Department-wide Class Action.

---

[10]  Plaintiff also alludes to the harm suffered by other inadequately compensated current
and former USDA employees (Pl.'s Response to Def.'s Opp. at 5-7), but, as noted earlier, those
employees are not plaintiffs in this case.

Id. ¶ 6.  Thus, there clearly would be substantial injury to other interested parties.

In light of plaintiff's failure to satisfy the first three factors, the Court finds it unnecessary to probe whether the public interest would be served by the requested injunction.  See Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 144 (D.D.C. 2004) ("In the absence of a likelihood that plaintiff can prevail on the merits of her . . . claim, the other factors relating to the availability of preliminary injunctive relief . . . need not be addressed in detail.").  Plaintiff, in any event, offers little more than the conclusory assertion that the public interest will be served, based on his assumption that he will prevail on his claim that the settlement agreement is unfair and unlawful.  However, as the Court has previously noted, plaintiff has failed, at this juncture, to prove a likelihood of success on that issue.  Accordingly the Court will deny plaintiff's motion for a preliminary injunction.

**IV. Plaintiff's Motion for Summary judgment**

Plaintiff's motion for summary judgment repeats his contentions in support of the merits of his case, reflecting, as one might expect, the same arguments set forth in his briefs in support of preliminary injunctive relief.  The motion for summary judgment, like his unsuccessful motion for injunctive relief, will be denied.

Plaintiff's motion for summary judgment is both procedurally and substantively flawed.  Summary judgment is appropriate only when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   Here, the Court already has concluded that plaintiff has failed to demonstrate a likelihood of success on the merits in the context of plaintiff's request for injunctive relief.  See supra pp. 17-19.  That is, many factors are balanced in determining whether a class action settlement agreement may be approved, and that balancing cannot be

conducted on the present incomplete record.  For the same reasons, plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law on his challenge to the <u>Basu</u> settlement agreement.

As to his claim of discriminatory nonselection for the two USDA positions he applied for in 2000, plaintiff has submitted no evidence that supports his contention that the USDA based the adverse decisions on his race.  Indeed, most of the exhibits attached to plaintiff's complaint are from the <u>Basu</u> proceedings, and do not bear on the particular circumstances of plaintiff's nonselection.  Plaintiff also has failed to comply with the requirement to provide "a statement of material facts as to which the moving party contends there is no genuine issue to be litigated." Local Civil Rule 7(h).  In short, because the record does not contain any evidence or other statement indicating which, if any, material facts relating to plaintiff's nonselections are undisputed, the Court will deny plaintiff's motion for summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for recusal, motion to stop and reverse implementation of the settlement agreement, and motion for summary judgment will be denied. Defendant's motion to dismiss or, in the alternative, for a more definite statement also will be denied. A separate order has been posted on this date.

_____/s/_____

JOHN D. BATES
United States District Judge

Date:  __August 7, 2007__