UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FAZAL RAHMAN**

               **Plaintiff**

**Vs**.

**CHUCK CONNER, ACTING**
**SECRETARY, U.S. DEPARTMENT**
**OF AGRICULTURE**

               **Defendant**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**RECEIVED**

DEC 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Civil Case No. **1:06-cv-1283 (JDB)**

## OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS CLAIM CONCERNING CLASS-ACTION SETTLEMENT AND FOR AN EXTENSION OF TIME, UNTIL AFTER RESOLUTION OF THE CLAIM AS TO THE BASU SETTLEMENT, TO FILE AN ANSWER OR OTHER RESPONSE TO THE COMPLAINT

The Defendant has filed the above two motions on October 4, 2007. I received copies of these four days ago, by mail. I still have not received any communication from the court about the filing of these new motions. Currently, I am located in an area of Pakistan where, due to war, there is disruption of all the essential services. Frequently, the electricity is out and I am unable to do the typing. Also, it seems that some of the mail from the court and the US Attorney's Office is being sent here by surface mail, in spite of the airmail charges being paid there. The reason may be that there are no AIRMAIL labels on the envelopes and the US Postal Service is sending these by surface mail, which takes several weeks for delivery. In

spite of these problems, I have tried my best to write and mail this document as soon as was possible.

In the following arguments and analysis of facts, it is demonstrated that the premises and contents of these motions are- factually, logically, and legally- absurd, erroneous, and self-destructive. Even though, these deserve to be denied and dismissed *prima facie*, below, I have presented detailed arguments and analysis of facts of this whole matter, which demonstrate the legal, logical, and factual necessity of denying and dismissing these new motions of the Defendant. Accordingly, the court is respectfully requested to deny and dismiss these. At the end of this document, I have also shown the need to issue a summary judgment on at least two of the issues, which meet all the criteria of such judgments, namely, the issue of unconstitutional and illegal change of the Asian/Pacific American (APA) class definition and an extremely unfair, unreasonable, inadequate, and racist-discriminatory offer of the grand sum of $5,000 for the settlement of my individual cases that involved positions with salaries of more than $100,000 per year and other benefits and just the back pay of which now amounts to more than $600,000, after holding these cases in abeyance, in the APA class action case, for six years.

It is requested that the previously submitted documents be also reviewed and incorporated into this Plaintiff's Opposition (PO), especially the *Complaint; Request to deny and disregard the Defendant's Motion to dismiss or for a more definite statement. Plaintiff's Motion for a Summary Judgment;* and *Response to defendant's reply memorandum to plaintiff's opposition to defendant's motion to dismiss or for a more definite statement and defendant's opposition to plaintiff's motion for summary judgment: supplement to plaintiff's motion for summary judgment.*

## Plaintiff's Arguments and Analysis of the Defendant's Memorandum of Points....

On page 5 of the Defendant's motion to dismiss claim concerning class-action settlement (henceforth referred to as DM1), the following statement appears in a footnote:

*"It appears that Plaintiff filed his claim challenging the Basu class-action settlement after the passage of 90 days following notice to the Plaintiff of the final decision of the EEOC rejecting his challenge. To the extent that Plaintiff received notice more than 90 days before he filed suit, his claim is subject to dismissal on this ground as well. See Wiley v. Johnson, 436, F. Supp.2d 91, 94 (D.D.C. 2006)."*

Defendant's above-quoted statement is factually erroneous. As stated clearly and specifically, in the beginning paragraph on Page 1 of the Complaint, reproduced here below, the case was filed within the 90-day time limit of the EEOC's final decision on my reconsideration request:

*"On June 28, 2005, the Office of Federal Operations (OFO) of US Equal Employment Opportunity Commission (EEOC), rejected my request for reconsideration (#05A50872) of its decision on my appeal #01A52527 against EEOC Administrative Judge's (AJ's) approval of the Settlement Agreement of the Asian/Pacific Islander Class Action Case #000190, against the US Department of Agriculture USDA (Exhibit 1, EEOC-AJ's decision). The OFO-EEOC issued the Right to Sue on the same date, stating that I had the right to sue in a federal court within 90 days of the receipt of their decision and that it would be assumed that I received their decision in 5 days after it was mailed to me on June 28, 2005 (Exhibit 2). The case is being filed within those time limits."*

Total number of days between the EEOC's decision of June 28, 2005 and filing of the case in Arizona on September 30, 2005 = 2 in June + 31 in July + 31 in August + 30 in September = 94 days.

EEOC's allowance of time for the mail delivery and reception = 5 days.

4

Number of days in which the case was filed, after subtracting the 5 days allowed by the EEOC for mail delivery and reception = 94-5 = 89 days.

As shown above, if the Defendant had tried very simple mathematics, it would have prevented it from this erroneous assertion for dismissal. The ground for this part of the DM1 for dismissal has been shown above to be factually erroneous. The Complaint *was* filed within 90 days, as specified by the EEOC.

Complaint's fundamental and most important issue has been, and continues to be, that Plaintiff's exclusion and expulsion, as well as those of the other Asian/Pacific Americans (APAs) from the Asian/Pacific American Class, in the settlement agreement, is unconstitutional and illegal. This change is in clear violation of the Fourteenth Amendment of US Constitution, Section 1, Equal Protection of the Laws, as well as of Title VII Civil Rights Act. The Defendant changed the original EEOC definition of the APA Class, which was in compliance with the equal protection provisions of the constitution and Title VII Civil Rights Act, to one that was not.

EEOC's Office of Federal Operation (OFO) had certified the class as, "All Asian/Pacific employees of the agency who were eligible for but have not received promotions and all Asian/Pacific persons who have applied for positions with the agency but have not been selected." (Compl. Exhibit 3, p. 1).

In the Settlement Agreement, the above OFO-EEOC certification and definition of the Class has been changed to, "All current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected." (Compl. Exhibit 3, p. 2).

The unconstitutional and illegal *particular* change of the definition of the Asian/Pacific American (APA) Class, by the Agency, from its original EEOC definition, and discriminatory,

unconstitutional, and illegal exclusion and expulsion of an important structural part of that Class, from the Class, has been identified and analyzed in detail on pages 1-6 of the Complaint, as well as in various other submitted documents. This change is in clear violation of the Fourteenth Amendment of US Constitution, Section 1, Equal Protection of the Laws, as well as of Title VII Civil Rights Act.

I was illegally and unconstitutionally removed from the APA Class, like numerous other APA Class Members, who are not current employees of the agency, even though all of us-the current employees and those who are not current employees-were job applicants for the positions of the same agency during the same time frame.

To be in compliance with the constitution and Title VII Civil Rights Act, in this regard, if the current Asian/Pacific American employees-who applied for the agency positions, for which they were qualified, but were not selected-were included in the class, then the equal protection clauses and provisions of the constitution and Title VII Civil Rights Act require that all Asian/Pacific American persons-who applied for the agency positions, for which they were qualified and eligible, but were not selected, during the same period as the current employees of the agency of the APA Class-must also be included in the class. The fact that they were not, constitutes a violation of the constitution and Title VII Civil Rights Act   Changing the definition of the class to expunge the non-employee Asian/Pacific American job applicants from the class, while including the employee Asian/Pacific American job applicants in the class, involving the same agency and the same time period, is, self-evidently, in violation of the constitution and its equal protection clauses and provisions as well as of the Title VII Civil Rights Act.  By affirming this violation of the constitution and Title VII Civil Rights Act, the OFO-EEOC also became a partner in this violation.

It is important to examine the logical, legal, and practical consequences of the Defendant's above-mentioned change of APA class definition and the EEOC's approval of it.

As part of that changed definition, the settlement agreement grants the relief only to the current USDA employees, who applied for the agency's positions, were qualified, but were not selected, during a certain time frame, in effect, recognizing the existence of discrimination against them. Numerous former employee (like myself) and non-employee APAs also applied for the agency positions, for which they were qualified, but were not selected, during the same time frame as the current employees. However, even though, initially they were included in the Class, they were later removed and expelled from it and according to the EEOC's decision on my appeal, they have been denied any relief whatsoever, because they are not considered to be class members, as a result of the Defendant's change of the class definition. The actions of the agency and EEOC, in this regard, can only be based upon two assumptions:

1. Only the APA job applicant who are agency's current employees, were subjected to discrimination and are entitled to relief. The former APA employees or non-employee APA job applicants were not subjected to discrimination, during the same time frame of job applications as that of the current employees. Hence, the former APA employees and non-employee APA job applicants are not entitled to any relief and, therefore, are excluded from the APA class. This assumption is legally, logically, and factually absurd. Its absurdity is self-evident.

2. Only the current APA employee job applicants are entitled to relief for discrimination. The former APA employees or the APA non-employees, who applied for the agency's positions, during the same period as the current APA employees, are not entitled to any relief for discrimination. This assumption is apodictically against the equal protection clauses of the constitution and Title VII Civil Rights Act, besides also being blatantly racist-discriminatory and absurd.

If those APAs-who have been unconstitutionally and illegally excluded and expelled from the APA class, with the above-mentioned unconstitutional, illegal, and absurd change

of class definition-file a new class action case and/or individual cases, against such unconstitutional and illegal action, it will be hard even for the EEOC, which is maximally complacent with the powers that be, in these matters, to dismiss them, as that would be such a total and naked self-contradiction (the EEOC is perfectly capable of doing this though, because of its impunity that has allowed it to literally act as an Orwellian fiefdom).   No authentic court of law would dismiss such cases as that would involve affirming such an apodictically unconstitutional, illegal, self-contradictory, and absurd action as is involved in the agency's change of APA class definition, in this case.  All this, of course, will result in totally unnecessary duplication, repetition, and expenditures of efforts, time, and resources, on part of the plaintiffs' as well as the USDA, EEOC, and the courts that are all publicly funded. The nature of class, in such cases, is objective, and must be consistent with the provisions of the constitution and the relevant laws.  The parties in such cases, the EEOC, and the courts have to operate within those parameters.  The structure and composition of classes must be consistent with the requirements of the constitution and the relevant laws.  Any class modifications also have to be consistent with these.  These should also meet the requirements of logical and rational consistency to prevent unnecessary wastage, duplication, repetition, and expenditures of individual and public human and financial resources that may result from the litigation made necessary only by the irrational, unconstitutional, and illegal definitions, structures, compositions, and modifications of the classes, as that of the APA class in this case.  The definition, structure, composition, and modification of the class cannot be entirely left to the subjectivity and whims of the class agents, defendants, or the EEOC bureaucrats.  As this is the most important premise of this case-that will have an impact on all other class action cases, in relation to class definition, structure, composition, and modifications, as well-I feel that this further elaboration and clarification is warranted.

This issue was brought to the attention of EEOC, most clearly and repeatedly, during the appeal process. However, it completely ignored it and failed to address or adjudicate it, once again demonstrating its cross-institutional Orwellian nature, corruption, incompetence, and complicity with the powers that be. EEOC's recent history is full of such actions. The minority employees of the federal government know such facts about the EEOC very well and have formed an organization, *Federal Employees Against Discrimination* (www.fedsfjustice.org), that focuses on such problems at the EEOC. Just because such an organization as the EEOC has approved such an unconstitutional and illegal action, as mentioned above and repeatedly in various other documents, and has chosen to ignore it and leave it un-addressed and un-adjudicated, does not transform it into its opposite, i-e., constitutional and legal. More importantly, this is the main issue of the Complaint, filed in this court. The court has still not issued its decision on this issue. *It is grotesque in the extreme that the Defendant is jumping way ahead of the court's decision on this issue and filing a motion to dismiss the case, which also contains many other intertwined issues, on the bizarre premise that it has already been decided in its favor, <u>before the court has issued its judgment on the constitutionality and legality of that action</u>!* The Defendant has started acting as if the court has already declared that action to be in accord with the constitution and Title VII laws, and not in violation of them. Nothing like that has happened yet. The Defendant has based its motion for dismissal and its arguments on the astoundingly bizarre and erroneous premise that the issue in question has already been decided in its favor and against the Plaintiff! This in-itself constitutes more than sufficient ground for dismissal of the Defendant's motion to dismiss claim concerning class-action settlement (DM1).

Is the Defendant arrogating to itself the powers of the court to adjudicate that issue for the court? Very strange indeed! The Plaintiff and other excluded and expelled members of the APA Class have the right to be assumed as the members of that Class during the processing and

adjudication of this case in the court. They will only cease to be members of that Class if and when the court decides that they are not. Even if that happens, they can still file an appeal against such a decision and their status of APA Class Members or Potential Class Members would then be revived. The Defendant has leaped way ahead of the court's decision on this matter and, apparently, has issued its own decision and is acting upon it! What unmatchable arrogance! What unmatchable incompetence and unprofessionalism! Even though I am not an attorney, I find it incredible that supposedly learned and experienced attorneys of the USDA and US attorneys of the Department of Justice are engaging in such illogical, irrational, self-evidently erroneous and flawed, incompetent, and illegal actions, and so mindlessly basing their malicious and conscienceless motions on these, instead of answering the concrete and specific issues of the case. Indeed, such actions are deliberately diversionary and misleading. There has been a pattern of such actions by the Defendant in this case, which only cause waste of time and resources of the court, the Plaintiff, and the public. Logically, the existence of such patterns should provide sufficient ground for a summary judgment against the party that designs and applies these.

The factual, logical, and legal flaws and erroneous nature of DM1 have been demonstrated above. Any citations of any precedents in such a motion is totally irrelevant and meaningless. In any case, the Defendant has used perverted rationalizations and characterizations to abuse and misapply the concepts of "actual cases", "controversies", and "standing". A rational, just, and accurate application of these categories and their components to the various concrete issues and facts of the case, as well as to the overall case itself, would leave no doubt that these support and affirm the case and not negate or oppose it, as the Defendant has attempted, through their perversion, abuse, and misapplication.

Such perversion and irrationalization of laws, legal concepts, and precedents, and their attempted application, not only defies all logic and rationality, and the interrelated facts and

their meanings, it also defies all common sense. The Defendant has established a pattern of creating a contradiction and opposition between the laws, legal concepts, and precedents, on the one hand, and facts, logic, rationality, common sense, and justice, on the other, by the perversion, distortion, misapplication, and misinterpretation of the former, throughout the processing and adjudication of this case. These two new motions of the Defendant are a glaring example of that.

In the motion for an extension of time, until after resolution of the claim as to the Basu settlement, to file an answer or other response to the complaint (hereafter referred to as DM2), the Brave New Attorneys (BNAs) of the Brave New World are at it again, attempting to destroy the whole case by chopping off and fragmenting its inextricably intertwined class and individual issues from each other. As stated repeatedly in my previous submissions, my individual cases and issues were placed within the Basu et. al. Asian/Pacific American Class Action Case, and the settlement agreement of that case, by the Defendant himself. The Complaint has also been filed within the context of that APA Class Action Case and its settlement agreement, as an inextricably intertwined and integrated part of it. Defendant's current representatives had earlier feigned great confusion about such integration and intertwining of the class and individual issues in this case and had filed a motion for its dismissal or a more definite statement, on that ground. Honorable Judge John D. Bates denied that motion in his Memorandum Opinion and Order of August 7, 2007, after making a thorough legal, rational, and objective analysis of this matter and the issues involved in it, in which, besides other matters, he accurately identified and described the nature of Plaintiff's claims and positions and some of the issues involved in these. The Defendant had tried his best to muddy the waters and spray the fog of confusion, diversion, and disinformation over these claims and issues, in order to obscure them and mislead the court. However, Judge Bates saw through all that and was able to identify them clearly and accurately. Now, the Defendant is attempting to

achieve the same objectives by filing these new motions that are nothing but variations of his earlier utterances in the previous motion, which has already been dismissed by the court. As such, this repetition of essentially the same utterances and the previous motion-that has already been dismissed by the court-needs to be dismissed also on that ground.

It is obvious that the Defendant is using operationalistic methods of fragmentation and destruction of this case. Such abuses of the methods of Operationalism are widespread in the US, in all areas of social sciences and political affairs. These are frequently abused for distortion, fragmentation, and destruction of holistic, integrated, and intertwined issues, problems, and concepts-of truth-by unscrupulous and conscienceless representatives of the powers that be and the vested interests, resulting in enormous falsifications, disinformation, mutilations of factual reality, and waste of time, efforts, and resources.

In DM2 also, the Defendant is making some bizarre statements that do not make any sense within the context of this case. For example, on page 1, it is stated, "*Further, any factual basis for the claim appears completely unrelated to the discrimination claim that is not challenged in Defendant's recently filed motion.*" This statement reveals an extremist abuse of the methods of Operationalism, used for the malicious purposes of fragmentation, distortion, and perversion of the interrelated and interdependent issues and facts, by the Defendant, as he is attempting to fragment the very factual basis and facts of the case from the case! How is it possible for any rational being to make the above-cited type of assertion of the Defendant? The discrimination claim is based upon concrete facts that constitute its inextricable basis and part of it. Is it not apodictic that without the factual basis and facts, the discrimination claim (case) would be nothing and without the discrimination claim (case), the factual basis and facts would lose all meanings? Can it be that the Defendant does not know this simple result of his assertion? Impossible. The Defendant is deliberately deploying this malicious and diabolical tactic to destroy the whole case by fragmenting the factual basis and facts from the

discrimination claims, hence attempting to render both meaningless and hollow. It is analogous to a dispute about a fruit-bearing tree between the two parties, in which the Plaintiff has filed a case that contains all the specific facts of that tree, e.g., number and size of fruits, branches and their sizes, height, spread of the crown, roots, etc. The Defendant files a motion (analogous to the above-cited assertions of the Defendant in DM2) that asserts that all those facts, roots, branches, fruits, leaves, etc.-the factual basis of the case-appear completely unrelated to the tree (analogous to the discrimination claim of the Complaint). In another motion (analogous to DM1 of the Defendant in this Complaint), the Defendant asks the court to have the roots, fruits, leaves, and branches chopped off and removed from the site that would only leave the bare, cut off, and dead trunk there. The Defendant expects the judge to grant that grotesque motion, which would make the whole living tree disappear, as if by magic, so that only the cut off, barren, and dead trunk would be found on the site. That would allow him to claim that there is no tree as there are no fruits, no roots, no branches, and no leaves, hence no factual basis for the case about the whole tree, and therefore, the case should be dismissed. The Defendant expects only the cut off, barren, and dead trunk to remain on the site after the granting of his first motion. He then files another motion for an extension of time for filing his answer only about that and not about the whole living tree, with fruits, roots, branches and leaves, about which the case was filed (analogous to DM2 of the Defendant in this Complaint). This analogy illustrates the basic plan, purpose, and essence of the Defendant's two new motions, DM1 and DM2, in this Complaint, precisely and very well, and demonstrates the utter intellectual-professional bankruptcy, absurdity, and dishonesty of the Defendant's plan, purpose, and position, implicit and explicit in these motions.

First, they placed me and my individual employment discrimination cases in the APA Class and the APA class action case (on page 4 of DM1, in the second paragraph, the Defendant states that it had previously identified me as a class member), holding them in

abeyance for more than four years by the time of the settlement agreement of that case, in which they changed the class definition in an unconstitutional and illegal way that caused my exclusion and expulsion from the Class, as well as that of other APAs, who are not current employees of USDA. My cases have now been held in abeyance for more than six years, as structural part of that APA class action case and its settlement agreement. Holding of such cases in abeyance for such prolonged periods of time causes additional damages to the plaintiffs, in cases like this, for which also, they deserve to be compensated. Then they attempted to con and humiliate me by offering the grand sum of #5,000 in exchange for dropping those cases, in which, just the back pay of the jobs involved now amounts to more than $600,000! On page 10 of their *Joint motion for approval of settlement agreement* of November 14, 2003, (Compl. Exhibit 11), the Parties state, "According to the current case law, both parties contend that the Settlement Agreement meets the fair and reasonable standard as articulated in 29 C.F.R. 1614.204 because every potential Class Member is included in the proposed agreement *and the terms of the proposed agreement reflect the relief that a Class Member may have received if successful at hearing, with some negotiated compromise."* My cases involved positions that pay more than $100,000 per year and all the other benefits associated with such positions. Is it not totally grotesque for the Defendant to claim, according to its above-cited statement, that I would have received only $5,000 (the amount that it offered to me for the settlement of those cases), if I had been successful at a hearing, with some negotiated compromise? And they claim that it is fair, adequate, and reasonable, with a straight face, without even batting an eye!

Not only elementary justice, fairness, and logic but also the common sense and elementary human decency require that any settlement offers of such cases should be commensurate with the levels of positions, salaries, and other benefits, involved in these cases. The Defendant, instead of feeling utter shame on such malicious, insulting, racist-

discriminatory, grotesquely unfair, unreasonable, inadequate, and ridiculous offer for the settlement of my cases, within the framework of APA class action case of discrimination, is pretending generosity and kindness and blaming me for being so ungrateful for refusing to suffer this extremist Orwellian "generosity", "kindness", and "fairness". Even if I were penniless and homeless, I would still not accept such extreme injustice, unfairness, unreasonableness, exploitation, and racist-discriminatory insults, as I would not be able to live with my conscience, intellect, and soul, if I did that. It is incomparably better to fight, even if defeated, than to submit to such dictatorship of injustice, evil, and lies.

The Defendant made the above totally bizarre, ridiculous, unreasonable, unfair, and inadequate offer of settling my individual cases, after holding them in abeyance for years, within the context of APA class action case and its settlement agreement. As such, the Plaintiff is entitled to a fair, reasonable, and adequate settlement, within the context of the same APA class action case and its settlement agreement. The Honorable Judge is hereby requested to make a judgment of this particular issue and, if he determines that the relief offered to the Plaintiff was indeed unfair, unreasonable, and inadequate, order the Defendant to rectify that offer for a fair, reasonable, and adequate relief, commensurate with the level of positions, salaries, and benefits involved in those. Considering what he has been put through by the various damaging actions of the Defendant, Plaintiff expects a full and make-whole relief. The exact nature of such relief can then be determined and calculated through mutual negotiations, the results of which can then be presented to the court for approval.

The Defendant has had a pattern of exhibiting a totally perverted institutional group mind and perversion of values, words, and concepts. George Orwell, in his famous book, *1984*, had described a society in which language and words were used to describe the opposite reality, e.g., war is peace, slavery is freedom, dictatorship is democracy etc. and vice versa. The Defendant has made significant contributions to the Orwellian vocabulary and language by

adding: wrong is right, lies are truth, injustice is justice, unfair is fair, unreasonable is reasonable, inadequate is adequate, evil is good, illegal is legal, unconstitutional is constitutional, damages and insults are relief, and depriving and cheating one of one's fair compensation for the inflicted damages is generosity and kindness etc. and vice versa. Even Aldous Huxley and George Orwell would have been shocked to see these Brave New Men and Women of the post-*1984 Brave New World*. No wonder the late great German-American social psychologist, Erich Fromm, at the end of his very creative and productive career in the US, in which he did extensive in-depth research on the problems of human nature, had exclaimed in disgust, "Man is dead." By that he meant that the human and spiritual qualities in Man were dead and Man was becoming a Robot. Many other visionaries, including the great American philosopher and naturalist, Thoreau, made similar observations, though not in such psychological detail and depth, as Fromm did in his analyses and writings.

If and when the abstract and fragmented procedures, laws, and precedents are interpreted and used in a way that is meant to or otherwise impedes and blocks the addressing and rectification of the violations of the constitution, as has been done repeatedly by the Defendant, through his representatives, throughout the processing and adjudication of this case, such actions are not only unconstitutional, these are also anti-constitutional, as the Constitution is the Supreme Law of the United States of America and any violations of any of its contents have the highest priority and must come first and foremost, overriding any one-sided, abstract, and conflicting applications of non-constitutional laws, procedures, and precedents. Such applications are erroneous and null and void by their very nature as these are erected in opposition to the Supreme Law of the Land, the US Constitution.

With DM1, the Defendant has enclosed a declaration from Mr. James H. Bradley, a high-ranking agency official that is totally unnecessary as all the facts contained in that have been repeatedly included in various documents, submitted to the court. The declaration adds

nothing new to those. So, what is the purpose of that declaration? Obviously, it is a cheap and vulgar classist maneuver to influence the court with Mr. Bradley's high ranking status, expecting the court not to be aware of the fact that it is precisely the result of such people as Mr. Bradley in the leadership positions that the USDA has acquired the unenviable and notorious honor of being known as the *Last Plantation* in the country.

## The role of socio-psychological factors and conditioning in Defendant's attitudes and actions: a brief analysis

Instead of answering the concrete constitutionally, legally, ethically, and philosophically important issues of the Complaint, the Defendant has once again resorted to filing these new motions, which are nothing but one more demonic assault on justice, truth, facts, logic, civil and employment rights laws, and relevant clauses of the Constitution-involved in this case, which in-itself is, quantitatively, very small but, qualitatively, contains issues that are of great constitutional, legal, ethical, and philosophical importance-with the aid of some abused, misinterpreted, and misapplied laws, precedents, and doctrines. The Defendant has repeatedly created such theatres of the absurd and sinister throughout the processing and adjudication of this case, first at the stage of EEOC appeal and now that of the court case. The EEOC has not only been a major actor in this Theatre of the Absurd and Sinister but has added its own innovations to it. Anyone who has some knowledge of the USDA and EEOC in these matters would be hardly surprised by their actions in this case, as these are routine and standard in these organizations. However, frankly, I was unaware that the US attorneys have also joined such demonic cross-institutional networks. It is a symptom of the Great Rot of the *Brave New World* that these organizations have been able to operate with impunity for so long. What are the causes? Ignorance? Definitely. But also conditioned and automatic complicity and mental slavery. There are still some people, with profound knowledge and insights into these problems, within the *Brave New World*, who have conducted and published in-depth studies on

the nature, operations, and effects of the development of *Group Mind, Organization Man* (in the past, specific types of these were being produced by various institutions and organizations. Now, these are being generalized cross-institutionally, greatly enhancing the uniformity, across the board), problems of contradictory development of mass psychology and human nature in the advanced technological societies, and the molding of human nature by the powerful politico-economic and institutional social forces. However, most people remain ignorant of their research and publications. These problems have no relevance for the *Brave New Men and Women* of the post-*1984, Brave New World*, who not only totally ignore them but also seem to have become incapable of understanding them. They are too busy making money and buying and consuming things. If George Orwell and Aldous Huxley were alive today, they would be shocked to see how far the modern *Brave New Men and Women* have advanced, beyond all their projections. The developing clone-like uniformity is the most dangerous and disastrous "development" human nature and mankind have ever faced in their entire history on this planet. There are definite and concrete causes of these sinister developments, among which, various variations of positivism and neo-positivism and behavioral psychology have wreaked havoc in all the social sciences, including those in the legal areas.

Why am I writing this here? Certainly, to the *Brave New Men and Women* of the *Brave New World*, this will appear to be irrelevant to this case or any other cases. However, in reality, this matter is of the greatest importance as these problems are embedded in the very foundations of the mass psychology of the *Group Mind* and *Organization Man*, which automatically regulate all the perceptions, analyses, and decision-making processes, including the selective interpretation and application of laws and decision-making in the legal establishment. Attorneys and judges are not computers, in spite of the great pressures to act like them. They are human, with a human mind and psychology that are conditioned and regulated by the social forces of society, like everyone else. It is a very complex and tough

problem as most of the practitioners are not even aware of it and engage in such practices automatically, self-righteously, and self-confidently, under the influence of the *Collective Unconscious*. Objectively, this great problem produces results that are, frequently, extremely detrimental to all the higher human values-including the great value of justice and its delivery-and that victimize very large numbers of people.

## Defendant's actions from the perspectives of philosophy and ethics of law

What is the most fundamental essence and function of laws and the legal system in a given society? It is the delivery of objective and equal justice and fairness to all its members, in accordance with the established constitution and laws in that society. Even though, in-itself, this case is very tiny, in quantitative terms, in qualitative terms, it contains issues that are huge, indeed. Some of these involve matters that touch upon the very essence of the legal system and the philosophy of law. In addition to its anti-constitutional and anti-legal stance, aims and actions, described above and in several other submitted documents, the Defendant has exhibited a total disregard and contempt for the very essence of the legal system and the philosophy of law, mentioned above. All the Defendant's representatives, including the US attorneys-who are public servants, paid from public resources-have acted as if they are private employees of the Defendant, and have resorted to extremist-subjectivist methods, maneuvers, tricks, distortions, and perversions to block the delivery of objective and equal justice and fairness to a member of the APA class and to the APA class itself, especially that part of it that was, unconstitutionally and illegally, expunged from the class, including the Plaintiff. They have tried their best to obscure and confuse the issues, facts, and the truth, instead of illuminating them. Objectively, they have also created contradictions between compliance with the requirements of the Constitution and Title VII Civil Rights Act, on the one hand, and procedural formality, on the other-absolutizing the latter and using it to attack the former; civil rights laws and their meanings and the procedural statutes; essence and form (all their motions

have the correct legal form but are in opposition to the real essence and truth of the issues); and holistically and inextricably intertwined unity of various issues and facts of the case vs. their subjective and malicious mutilation and fragmentation, etc. They have done all that in the service of racism, discrimination, injustice, unfairness, dishonesty, and lies-in a word, evil. Why? To prevent a partial rectification of the racist-discriminatory damages, inflicted on a naturalized minority citizen, by a federal government agency, USDA, that is notorious for being the worst in the areas of civil and employment rights of the minorities.

When the laws and the legal system fail to conform to their essence and fail to deliver justice to certain groups of people, large and powerful movements for changes in the social and legal systems are born that, sometime, result in violent revolutions. Civil rights movement of the 1960s, even though non-violent, was subjected to brutal racist and state violence in efforts to repress it. However, as a result of perseverance, resilience, and dedication of oppressed Afro-Americans, it could not be repressed and it achieved a partial success in the struggle for equality and equal justice, in the form of the passage of new civil rights legislation, which, subsequently has been subverted through non-enforcement or partial and/or Orwellian enforcement by organizations like the USDA and EEOC. The role of EEOC in this regard, has been extremely sinister as it is the main organization that was entrusted with the implementation and enforcement of the new civil rights legislation, but, instead of doing that, starting in the 1980s, it has increasingly become subservient to and a tool of the powers that be in the government and corporate institutions. It has now reached a stage where it stands naked and most minorities see it clearly for what it is: their enemy. Only majority of the whites still harbor illusions about it and think that it has solved the major problems of discrimination and continues to solve the remaining ones, which, they think, are minor. The statistical data do not support such illusions. For example, according to the data of the National Science Foundation (NSF), the under-representation of minorities on the workforce is extremely low, 5 percent for

all the minorities, except the Asians-the worst of all the professions-in the field of sciences and engineering, and among those, it is the worst in agricultural related areas. US Congress had recognized this problem and, in 1980, created legislation to address and rectify this problem. NSF was entrusted with this task. However, the NSF has failed dismally to carry out its duties and, as a result, the situation has changed very little.

Only a very tiny proportion of the minorities have been able to benefit, economically and professionally, as a result of the civil rights and equal opportunity legislations. For the overwhelming majority of the oppressed minority populations, which gained little or nothing, economically and professionally, from that legislation, the struggle for equal economic rights will be much harder than that for the civil rights, but it *will* happen in the not-too-distant future. In the meantime, we are forced to struggle alone, individually, against the deeply entrenched, highly organized, powerful, and resourceful cross-institutional networks of racism and discrimination that are in denial of their real nature, even though such practices are routine and standard in them.

I have fought a good battle, single-handedly, entirely on my own, against powerful, resourceful, and highly organized cross-institutional forces of injustice, dishonesty, lies, intellectual-spiritual atrophy, discrimination, and racism-evil-for the cause of objective and equal justice, fairness, truth, non-discrimination, and compliance with the requirements of the provisions of the US Constitution and Title VII Civil Rights Legislation. When all is said and done, that is what counts, regardless of the results. One of my major principles is, "What is necessary to be done, must be done, regardless of the expected results." I believe that I have been faithful to that principle in this case too, and that is what counts for me more than anything else.

## Investigation of Civil Rights at USDA by the Government Accountability Office (GAO)

I have been informed that the civil rights problems and Office of the Assistant Secretary for Civil Rights at USDA are being investigated by the Government Accountability Office (GAO). Some class agents of the Basu et. al. APA class action case, involved in this Complaint, have also informed me that the GAO investigation includes the settlement agreement of that case. It seems that the GAO has still not published the results of this investigation and has not issued its report yet. The Defendant has not provided any information about this important matter to the Court or the Plaintiff. The Court is hereby requested to order the Defendant to provide the relevant information about the GAO investigation both to the Plaintiff and the Court. Among other matters, the overall nature of the investigation, and its component of Basu et. al. APA Class Action Settlement Agreement, should be disclosed, as well as the causes and reasons for its initiation and results, if any, so far. Moreover, if permissible, it will also be relevant to inform us about the persons who requested this investigation. Evidently, this matter is of such importance that I am also filing a separate motion, along with this document, for the provision of this information to the Court and the Plaintiff.

## Conclusion

The self-destructive factual and logical errors, as well as the anti-constitutional and anti-legal nature and aims of the Defendant's two new motions of October 4, 2007, have now been sufficiently demonstrated above. As such, the court is respectfully requested to deny and dismiss these.

In view of the continuous pattern of bad faith, logical and factual errors and absurdities, and anti-constitutional and anti-legal aims and contents of the various motions of the Defendant, due to which, more than two years have already been wasted on this case-the Defendant still has not answered the Complaint, under various pretexts-the court is respectfully requested to consider issuing a summary judgment, on the whole or part of the case-as it may see fit. The court also has the power to issue such a summary judgment on its own initiative. As demonstrated above, parts of this case, e.g., the above-mentioned unconstitutional and illegal change of the APA class definition and the entirely unfair, unreasonable, inadequate, and racist-discriminatory settlement offer to the Plaintiff, by the Defendant, are, apodictically, irrefutable, indefensible, and beyond contradiction. There is nothing the Defendant can do to dispute these except resorting to even more lies, distortions, perversions, and waste of time and resources. Therefore, these two issues fulfill all the requirements and criteria of the summary judgments. All the facts, evidence, arguments, and analyses, in this regard, are already there in various documents, submitted to the court, including this one. No discovery, witnesses, testimonies, or arguments can change the nature of unconstitutional, illegal, unfair, unreasonable, inadequate, dishonest, and racist-discriminatory actions of the Defendant, in connection with these two issues. These are of such apodictic nature that the issues they pertain to, can be, and ought to be, resolved, on that basis, without a trial, as their adjudication, at this stage of the development of the case, falls entirely into the category of rational and

theoretical legal judgment and its application, because, as stated above, no discovery, witnesses, testimonies, or arguments can alter the reality of these issues, and hence, would be totally superfluous and a waste of time, effort, and resources.  In regard to the settlement offer, as stated on pages 2 and 13 to 15 of this document, the court is requested to order the Defendant to rectify its entirely unacceptable, unfair, unreasonable, inadequate, and racist-discriminatory offer, and also award the Plaintiff the compensatory and punitive damages, as requested in the Complaint.


Respectfully submitted **this 10th day of November 2007**

*Fazal Rahman*

Fazal Rahman, Ph.D., Plaintiff
17 The Mall, Kohat Cantt.
Kohat, NWFP, Pakistan.

Email: Unpollutedfaza@aol.com or UnpollutedFR@yahoo.com
Telephone:  011-92-922-518771