## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAZAL RAHMAN, Ph.D.** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Vs. ) | |
| ) | |
| ) | Civil Case No. **1:06-cv-1283 (JDB)** |
| ) | |
| **MIKE JOHANNS** ) | |
| **SECRETARY, U.S. DEPARTMENT** ) | |
| **OF AGRICULTURE,** ) | |
| ) | |
| **Defendant** ) | |
| ) | |

### PLAINTIFF'S MEMORANDUM ABOUT EEOC'S DECISION ON HIS MEMBERSHIP OF THE BASU CLASS AND PROPOSAL FOR THE COURT'S ACTION, AS ORDERED BY THE COURT ON OCTOBER 12, 2009

In the order of October 12, 2009, the court ordered the Plaintiff and Defendant to file memoranda addressing whether, assuming this court has jurisdiction to review the EEOC's determination that Plaintiff is not a member of the Basu settlement class, the court should nonetheless affirm that determination. Plaintiff has already submitted detailed factual, logical, legal, and constitutional analyses of this most crucial and fundamental matter in various documents submitted to the court, the latest being "Reminder summary of selected issues of the Complaint" (See pages 1-6), submitted on March 9, 2009, in which some previous documents, containing such analysis were also cited. This analysis is being pasted below here, with a few minor modifications:

## The issue of change of the class definition

Complaint's fundamental and most important issue has been, and continues to be, that Plaintiff's

exclusion and expulsion, as well as those of the other Asian/Pacific American (APA) job

applicants, who were not current employees of the agency, from the Asian/Pacific American

Class, in the settlement agreement, is unconstitutional, illegal, anti-logical, and unfair.  This

change is in clear violation of the Fourteenth Amendment of US Constitution, Section 1, Equal

Protection of the Laws, as well as of Title VII Civil Rights Act.

The Defendant changed the original EEOC definition of the APA Class, which was in compliance

with the equal protection provisions of the constitution and Title VII Civil Rights Act, to one that

was not.

EEOC's Office of Federal Operation (OFO) had certified the class as, "All Asian/Pacific

employees of the agency who were eligible for but have not received promotions and all

Asian/Pacific persons who have applied for positions with the agency but have not been selected."

(Compl. Exhibit 3, p. 1).

In the Settlement Agreement, the above OFO-EEOC certification and definition of the Class has

been changed to, "All current Asian/Pacific Islander employees at the GS-7 level and above who

were eligible for but have not received promotions and all Asian/Pacific Islander current

employees who were eligible for and have applied for positions with the Department but have not

been selected." (Compl. Exhibit 3, p. 2).

The unconstitutional and illegal *particular* change of the definition of the Asian/Pacific American

(APA) Class, by the Agency, from its original EEOC definition, and discriminatory, irrational,

unconstitutional, and illegal exclusion and expulsion of an important structural part of that Class,

from the Class, has been identified and analyzed in detail on pages 1-6 of the Complaint, as well

as in various other submitted documents. This change is in clear violation of the Fourteenth

Amendment of US Constitution, Section 1, Equal Protection of the Laws, as well as of Title VII
Civil Rights Act. It also violates the objective nature of the class and substitutes a subjective class
for an objective one.

I was illegally and unconstitutionally removed from the APA Class, like numerous other APA
Class Members, who are not current employees of the agency, even though all of us-the current
employees and those who are not current employees-were job applicants for the positions of the
same agency during the same timeframe.

To be in compliance with the constitution and Title VII Civil Rights Act, in this regard, if the
current Asian/Pacific America employees-who applied for the agency positions, for which they
were qualified, but were not selected-were included in the class, then the equal protection clauses
and provisions of the constitution and Title VII Civil Rights Act require that all Asian/Pacific
American persons-who applied for the agency positions, for which they were qualified and
eligible, but were not selected, during the same period as the current employees of the agency of
the APA Class-must also be included in the class. The fact that they were not, constitutes a
violation of the constitution and Title VII Civil Rights Act  Changing the definition of the class to
expunge the non-employee Asian/Pacific American job applicants from the class, while including
the employee Asian/Pacific American job applicants in the class, involving the same agency and
the same time period, is, self-evidently, in violation of the constitution and its equal protection
clauses and provisions as well as of the Title VII Civil Rights Act. By affirming this violation of
the constitution and Title VII Civil Rights Act, the OFO-EEOC also became a partner in this
violation. It is important to note that I am not claiming that any change in the class definition
would have been unconstitutional, illegal, or illogical. There would have been no constitutional,
legal, or logical problem if the Defendant had changed the definition of the class that was
consistent with the constitutional, legal, and logical requirements. For example, if it had included

only the issue of job promotions in the case and had restricted the class to its current employees, in the changed definition of the class, there would have been no problem, as only the current employees could have suffered the effects of discrimination in promotions. As explained above, the problems arose as a result of the inclusion of the category of job applicants in the case and the changed definition of the class.

It is important to examine the logical, legal, and practical consequences of the Defendant's above-mentioned change of APA class definition and the EEOC's approval of it. As part of that changed definition, the settlement agreement grants the relief to the current USDA employees, who applied for the agency's positions, were qualified, but were not selected, during a certain timeframe, in effect, recognizing the existence of discrimination against them. Numerous former employee (like me) and non-employee APAs also applied for the agency positions, for which they were qualified, but were not selected, during the same timeframe as the current employees. The agency's action in this regard can only be based upon two assumptions:

1. Only the APA job applicant who are agency's current employees, were subjected to discrimination and are entitled to relief. The former APA employees or non-employee APA job applicants were not subjected to discrimination, during the same timeframe of job applications as that of the current employees. Hence, the former APA employees and non-employee APA job applicants are not entitled to any relief and, therefore, are excluded from the APA class. This assumption is legally, logically, and factually absurd. Its absurdity is self-evident.

2. Only the current APA employee job applicants are entitled to relief for discrimination. The former APA employees or the APA non-employees, who applied for the agency's positions, during the same period as the current APA employees, are not entitled to any relief for discrimination. This assumption is apodictically against the equal protection clauses of the

constitution and Title VII Civil Rights Act, besides also being blatantly racist-discriminatory and absurd.

If those APAs-who have been unconstitutionally and illegally excluded and expelled from the APA class, with the above-mentioned unconstitutional, illegal, and absurd change of class definition-file a new class action case and/or individual cases, against such unconstitutional and illegal action, it will be hard even for the EEOC, which is maximally complacent with the powers that be, in these matters, to dismiss them, as that would be such a total and naked self-contradiction (the EEOC is perfectly capable of doing this though, because of its impunity that has allowed it to literally act as an Orwellian fiefdom).   No authentic court of law would dismiss such cases as that would involve affirming such an apodictically unconstitutional, illegal, self-contradictory, and absurd action as is involved in the agency's change of APA class definition, in this case.  All this, of course, will result in totally unnecessary duplication, repetition, and expenditures of efforts, time, and resources, on part of the plaintiffs' as well as the USDA, EEOC, and the courts that are all publicly funded. The nature of class, in such cases, is objective, and must be consistent with the provisions of the constitution and the relevant laws, as well as with the requirements of logic, fairness, and economy of human and financial resources in the administrative and legal systems.  The parties in such cases, the EEOC, and the courts have to operate within those parameters.  The structure and composition of classes must be consistent with the above-mentioned requirements.  Any class modifications also have to be consistent with these. These should also meet the requirements of logical and rational consistency to prevent unnecessary wastage, duplication, repetition, and expenditures of individual and public human and financial resources that may result from the litigation made necessary only by the subjective, irrational, unconstitutional, and illegal definitions, structures, compositions, and modifications of the classes, as that of the APA class in this case.  The definition, structure, composition, and

modification of the class cannot be entirely left to the subjectivity and whims of the class agents, defendants, or the EEOC bureaucrats.  As this is the most important premise of this case-that will have an impact on all other class action cases, in relation to class definition, structure, composition, and modifications, as well-I feel that this further elaboration and clarification is warranted.

Such analysis was also submitted to the EEOC.  However, both the EEOC and Defendant totally ignored and glossed over this crucial logical-legal-constitutional analysis of this most important issue.  Even at the stage of this court case, the Defendant has completely failed to respond to the contents of this analysis and, instead, has engaged in absurd, anti-logical, and self-contradictory trapezes, maneuvers, and assertions.  For numerous years, it was claiming that I was a member of the Basu class settlement and held my individual cases in abeyance on that ground.  Even after the EEOC's decision, it continued to maintain that position.  Then suddenly, it made an astonishing trapeze in its memorandum of January 22, 2009, stating that I was not a member of the Basu settlement class!  I briefly discussed the irrational and self-contradictory nature of that astounding trapeze on page 7 of my February 9, 2009 submission to the court, "Plaintiff's response to Defendant's memorandum of January 22, 2009."

### The nature and importance of logic in the interpretation and application of laws: Essentiality of harmony between logic and interpretation and application of laws. Demonstrative proof of the anti-logical nature of EEOC's decision and its reflection and determining effects on the unconstitutionality and illegality of that decision

In my various submissions to the court, I have emphasized the importance of logical consistency-based upon concrete facts- and its harmony with the relevant constitutional and legal laws. The use and abuse of logic is more prevalent in the legal system than any other area.  Attorneys, judges, plaintiffs, and defendants all engage in it constantly, overwhelming majority without any real knowledge or training in the field.  The science of logic was first created by the ancient Greek

philosopher Aristotle (384-322 BC), in which he established the basic concepts, principles, and methods of logic, the scientific validity of which has lasted to the present day. Only in recent decades, there have been some further developments in the field of logic but the basic Aristotelian terminology, methods, concepts, and principles have remained unchanged. In logic and its accompanying syllogisms, any valid demonstrative reasoning and accurate conclusions are only possible on the basis of true premises. If the premises are inaccurate and false, all reasoning and conclusions drawn from them would also be inaccurate and false. Unfortunately, such sophistry is widespread in modern materialist societies and the methods of genuine logic have been, by and large, replaced by those of operationalism that, frequently, fragment, disconnect, mutilate, and distort the interrelated facts and their meanings, in the analyses of all social and human problems and issues, hence producing results that are, in most cases, diametrically the opposite of those that would be produced by authentic and genuine logic. Both the EEOC and Defendant have engaged in such sophistry and have produced astoundingly unjust, inaccurate, and false reasoning, conclusions, and judgments, precisely because these were based upon inaccurate, false, and unconstitutional and illegal premises. They failed to ask or answer the following crucial questions in this regard: 1. Is the nature of class objective or subjective? 2. Was the changed definition of the Basu class by the agency consistent with the requirements of constitutional and legal laws-especially with the equal protection clauses-, fairness, logic, rationality, and economy of human and financial resources in the legal system? 3. What indeed is one of the major purposes of class action cases, if not the economy of human and financial resources in the legal system as well as for the large numbers of class members and the defendants? 4. What would be the effects of restricting the Basu class to current Asian/Pacific American (APA) employees in the changed definition-in relation to the job applications? Would it not result in an unnecessary, wasteful, and duplicate new class action case on part of those APA job applicants-during the same timeframe

and involving the same agency-who were not current employees of the agency? 5. Is it permissible to subjectively create a class composition, or change one into, which is in violation of the equal protection clauses of the constitution and laws as well as of logic, rationality, justice, fairness, and requirements of the economy of human and financial resources in the legal system?

If these questions had been asked and answered accurately, these would have provided the accurate and true premises for drawing the accurate and true conclusions and judgments as well as for the accurate demonstrative reasoning. Due to limitations of space in the court's order, I cannot go into the accurate answers to these questions and the derivation of true and accurate premises on that basis. However, it is self-evident that all the "reasoning", actions, conclusions, and judgments of the EEOC and Defendant were in complete violation of these true and accurate premises and were, instead, based upon false and inaccurate premises. That is the basic reason why the Defendant was forced into engaging in such clumsy and self-contradictory trapezes, as described in this and other submissions to the court.

Plaintiff's being or not being a member of the Basu settlement class is a matter that is inextricably intertwined with the basis and context of the true or false, accurate or inaccurate premises, as described briefly above. This matter can only be resolved justly and accurately by examining it in relation to its true and accurate premises. To fragment it from those premises or to examine it within the false and inaccurate premises-a la EEOC and the Defendant- will lead to false and inaccurate reasoning, conclusions, and judgments, hence to injustice. Therefore, if the intent is to arrive at logically, legally, and constitutionally accurate conclusions and judgments-the validity of which can be established and proven through demonstrative reasoning that can be traced back to the true and accurate premises, as described above-it would be impossible to affirm the EEOC's determination that the Plaintiff is not a member of the Basu class. Some facts are organically embedded and are part of the context of larger facts. If they are artificially removed from that

larger structural context, they lose their factuality and meaning. The fact of my being or not being a member of Basu settlement class is that type of a fact. It is organically embedded in the context of larger fact of the composition of the Basu class. It would be a great logical error to artificially remove, disconnect, and view it in dissociation from its embedding context of the larger fact of Basu class composition. Needless to say that this logical error will also lead to legal and constitutional errors. The key point here is that the fact of my being or not being a member of the Basu settlement class is not external to the larger fact of the Basu class composition, in which it is inextricably embedded and indeed is part of.

**Court's previous observations and conclusions about Plaintiff's membership in the Basu settlement class, in its decision of August 25, 2008**

The following is from this court's August 25, 2008 decision (on pages 2 and 3):

*"There are, however, significant problems with defendant's argument. First, as defendant candidly acknowledges, the record in this case to date is replete with agency documents describing plaintiff as a member of the Basu class, subsequent to and notwithstanding the EEOC OFO determination. The USDA sent letters to plaintiff dated June 2, 2005, and August 24, 2005, stating that his "pending complaints fall[] within the scope of the Basu class action" and, specifically, that he falls within "'Tier Three" of the Basu settlement agreement. See Def.'s Mem., Declaration of James H. Bradley ("Bradley Decl.") and accompanying exhibits. Second, the final approval of the settlement agreement states that the approved class encompasses USDA employees who filed complaints from "1994 to September 2, 2003." See Compl., Exhibit 1 at 3. That time period clearly encompasses plaintiff's administrative complaints challenging his two nonselections, which defendant concedes were filed in 2001. See Bradley Decl. ¶ 12. Furthermore, defendant states that the USDA has held plaintiff's administrative complaints in abeyance specifically because of the Basu settlement agreement. See Def.'s Mem. at 4. In short,*

*the record currently before the Court is, at best, inconclusive as to whether the settlement agreement excludes plaintiff, notwithstanding the EEOC OFO determination."*

After the above court decision, the Defendant provided the court with a copy of full record of the filing of Basu class action case. There is nothing in that full record that would change the facts or their context and the above observations and conclusions of the court, in relation to the Plaintiff's membership in the Basu class settlement. This would further reinforce Plaintiff's above argument that it would be impossible to affirm the EEOC's determination that the Plaintiff is not a member of the Basu class.

### Conclusion

As demonstrated above-through factual and logical analysis, with the use of logical methods, tools, and concepts-logically, legally, constitutionally, and ethically, it is impossible to affirm or support the EEOC's determination in this case that the Plaintiff is not a member of the Basu settlement class. As also cited above, court's own previous observations and conclusions also support and reinforce this conclusion. Therefore, the court is respectfully requested to annul the EEOC's decision and replace it with its own decision that would recognize and enforce the Plaintiff's membership of the Basu settlement class.

**Respectfully submitted** this 5th day of November, 2009

Fazal Rahman. Ph.D., Plaintiff
1143 Ferry Road
Bancroft, ME 04497
Email: Unpollutedfaz@aol.com
Telephone: (207)456-7372

**Certificate of Service**

I hereby certify that a copy of "Plaintiff's memorandum about EEOC's decision on his
membership of the Basu class and proposal for the court's action, as ordered by the court on
October 12, 2009" has been sent on November 5, 2009, by First Class Mail, to the following:


Clerk's Office
US District Court for the District of Columbia
US Courthouse
333 Constitution Avenue, NW
Washington, DC 20001

Christopher B. Harwood, Assistant US Attorney
Civil Division, US Attorney's Office
555 Fourth Street, NW
Washington, DC 20530
(Also sent by email)

*Fazal Rahman*

Fazal Rahman, Ph.D., Plaintiff